UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COPY

| | |
|---|---|
| SEVERSTAL WHEELING, INC.<br>RETIREMENT COMMITTEE, TIMOTHY<br>S. ROGERS, VINCENT D. ASSETTA,<br>MELVIN BAGGETT and WILLIAM DREW<br>LANDON, as named fiduciaries of the<br>Wheeling Corrugating Company Retirement<br>Security Plan, the Salaried Employees'<br>Pension Plan of Severstal Wheeling, Inc., and<br>SEVERSTAL WHEELING, INC., as named<br>fiduciary of the Severstal Wheeling, Inc.<br>Pension Plan,<br><br>                    Plaintiffs,<br><br>          v.<br><br>WPN CORPORATION, in its own capacity<br>and as named fiduciary of the Wheeling<br>Corrugating Company Retirement Security<br>Plan and the Salaried Employees' Pension<br>Plan of Severstal Wheeling, Inc., and<br>RONALD LABOW, in his individual<br>capacity and as named fiduciary of the<br>Wheeling Corrugating Company Retirement<br>Security Plan and the Salaried Employees'<br>Pension Plan of Severstal Wheeling, Inc.,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

Civil Action No. _____

FILED
FEB 5 2010
USDC WP SDNY

'10 CIV 00954

JUDGE SWAIN

## COMPLAINT

Plaintiffs Severstal Wheeling, Inc. Retirement Committee (the "Severstal Retirement Committee"), Timothy S. Rogers ("Rogers"), Vincent D. Assetta ("Assetta"), Melvin Baggett ("Baggett"), William Drew Landon ("Landon"), and Severstal Wheeling, Inc. ("Severstal Wheeling") (collectively, the "Plaintiffs") hereby commence this civil action against Defendants WPN Corporation ("WPN") and Ronald LaBow (collectively, the "Defendants"). In support of their civil action, Plaintiffs allege as follows:

{V0027989.1}

## I.    Jurisdiction and Venue

1.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs assert claims under Section 502(a)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(2) and, therefore, Plaintiffs claims arise under federal law.  This court has supplemental jurisdiction over Plaintiff's pendant claims under New York state law pursuant to 28 U.S.C. § 1367.

2.    Venue is proper in this judicial district pursuant to both ERISA's venue provision, 29 U.S.C. § 1132(e)(2), and the general federal venue provisions of 28 U.S.C. § 1391 because both Defendants reside in this district.

## II.    Parties

### A.    Plaintiffs

3.    Plaintiff Severstal Wheeling is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of West Virginia.   Severstal Wheeling's primary location is at 1134 Market Street, Wheeling, West Virginia 26003.

4.    Plaintiff Severstal Retirement Committee is a committee composed of at least three (3) directors, officers or employees of Severstal Wheeling, Inc. and is responsible for the general administration and for carrying out the applicable provisions of all of Severstal Wheeling's employee retirement plans.

5.    The Severstal Retirement Committee is currently composed of four members: Plaintiffs Rogers, Assetta, Baggett and Landon.   Rogers and Assetta are adult individuals residing in the Commonwealth of Pennsylvania.  Baggett is an adult individual residing in the State of Michigan.  Landon is an adult individual residing in the State of Ohio.

{V0027989.1}

B.      Defendants

6.      Upon information and belief, Defendant WPN is a corporation organized under the laws of the State of New York and maintains its principal place of business at 110 East 59th Street, 30th Floor, New York, New York 10022.

7.      Upon information and belief, Defendant LaBow is an individual residing in the State of New York.

8.      Upon information and belief, Defendant LaBow is the principal and only executive officer of WPN.

## III.      The Relevant Benefit Plans

9.      Plaintiff Severstal Wheeling operates and is the "sponsor" (within the meaning of ERISA Section 3(16)(B), 29 U.S.C. § 1002(16)(B)) of three retirement plans which it operates for the benefit of its employees.  All three plans are "employee benefit pension plans" within the meaning of ERISA Section 3(2)(A), 29 U.S.C. § 1002(2)(A).

10.     The Wheeling Corrugating Company Retirement Security Plan (the "Wheeling Corrugating Plan") is a defined contribution plan regulated by ERISA.  Hourly-paid production and maintenance employees of Wheeling Corrugating Company (which is a Division of Severstal Wheeling), including those employees who are subject to a collective bargaining agreement, are eligible to participate in the Wheeling Corrugating Plan.   The Wheeling Corrugating Plan Documents are attached hereto as **Exhibit A.**

11.     The Salaried Employees' Pension Plan of Severstal Wheeling, Inc. (the "Salaried Employees Plan") is a defined contribution plan regulated by ERISA.  Salaried employees of Severstal Wheeling are eligible to participate in the Salaried Employees Plan, provided that they

{V0027989.1}

are not subject to a collective bargaining agreement. The Salaried Employees Plan Documents are attached hereto as **Exhibit B**.

12.    The Severstal Wheeling, Inc. Pension Plan (the "DB Plan") is a defined benefit plan regulated by ERISA. Some of the participants in the DB Plan are also participants in the Salaried Employees Plan. The two Plans are arranged in a "floor offset" arrangement, meaning that the benefits to which common participants are entitled under the DB Plan are "offset" by the value of their individual accounts in the Salaried Employees Plan. The DB Plan Documents are attached hereto as **Exhibit C**.

13.    The Wheeling Corrugating and Salaried Employees Plans are legal entities which can sue or be sued pursuant to ERISA Section 502(d)(1), 29 U.S.C. § 1132(d)(1). In the ERISA breach of fiduciary duty action set forth below, neither the Wheeling Corrugating Plan nor the Salaried Employees Plan are plaintiffs. Rather, pursuant to ERISA Section 409, 29 U.S.C. § 1109, and the case law which interprets it, the relief requested in the ERISA fiduciary duty action set forth below is for the benefit of the Wheeling Corrugating Plan and Salaried Employees Plan.

14.    The DB Plan is also a legal entity which can sue or be sued pursuant to ERISA Section 502(d)(1), 29 U.S.C. § 1132(d)(1). However, because neither Defendant was a fiduciary with respect to the DB Plan (*see* paragraphs 20, 22 *infra*), Plaintiff Severstal Wheeling has filed breach of contract and professional negligence claims against Defendants under New York state law to recover losses incurred by the DB Plan that proximately resulted from Defendant LaBow's breach of his investment management agreement with Severstal Wheeling and from LaBow's breach of his duty to competently manage the Severstal Trust.

## IV.    Fiduciary Allegations

15.    ERISA requires every plan to provide one or more named fiduciaries who will have "authority to control and manage the operation and administration of the Plan." 29 U.S.C. § 1102(a)(1).

16.    In accordance with Section 402(a)(1), 29 U.S.C. § 1102(a)(1), ERISA treats as fiduciaries all persons explicitly named as fiduciaries in the Plan.  In addition, ERISA treats as fiduciaries all persons who perform fiduciary functions.  Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so; or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

17.    Plaintiffs Severstal Retirement Committee, Rogers, Assetta, Baggett and Landon are all named fiduciaries of the Wheeling Corrugating Plan and the Salaried Employees Plan pursuant to paragraph 8.010 of the Wheeling Corrugating Plan and paragraph 9.1 of the Salaried Employees Plan and are filing the instant action in that capacity.

18.    Plaintiff Severstal Wheeling is a named fiduciary of the DB Plan and is filing the instant action in that capacity.

19.    At all times relevant to Plaintiffs' claims, Defendant WPN was a named fiduciary of the Wheeling Corrugating Plan and the Salaried Employees Plan pursuant to ERISA Section 402(a), 29 U.S.C. § 1102(a).

20.    Defendant WPN is not and has never been a fiduciary of the DB Plan.

{V0027989.1}

21.    At all times relevant to Plaintiffs' claims, Defendant LaBow was a named fiduciary of the Wheeling Corrugating Plan and the Salaried Employees Plan pursuant to ERISA Section 402(a), 29 U.S.C. § 1102(a).

22.    Defendant LaBow is not and has never been a fiduciary of the DB Plan.

23.    As fiduciaries of the Wheeling Corrugating Plan and the Salaried Employees Plan, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), to manage and administer the two Plans, and the Plans' investments solely in the interest of the Plans' participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

## V.    Facts Underlying Plaintiffs' Claims

A.    Plaintiff Severstal Wheeling's Corporate Background

24.    Severstal Wheeling produces and manufactures cold-rolled and hot-rolled sheet steel and steel coated products.

25.    The corporate predecessor of Severstal Wheeling was Wheeling-Pittsburgh Steel Corporation. Prior to August 1, 2003, Wheeling-Pittsburgh Steel Corporation was a wholly-owned subsidiary of Wheeling-Pittsburgh Corporation, which, in turn, was a wholly-owned subsidiary of WHX Corporation. Defendant LaBow was, at one time, the Chairman of the Board of Directors of WHX Corporation.

26.    Prior to August 1, 2003, the Wheeling Corrugating Plan and the Salaried Employees Plan were funded and maintained through the WHX Pension Plan Trust (the "WHX Pension Trust"). The Wheeling Corrugating Plan and the Salaried Employees Plan constituted approximately 10% of the total assets in the WHX Pension Trust. Upon information and belief,

{V0027989.1}

the remaining 90% of the assets in the WHX Pension Trust constituted benefit or retirement plans sponsored and/or maintained by WHX Corporation and/or its subsidiaries.

27.     On August 1, 2003, after a period of bankruptcy, Wheeling-Pittsburgh Corporation became an independently traded public company and was no longer owned by WHX Corporation.

28.     On November 27, 2007, Wheeling-Pittsburgh Corporation and Esmark Steel Service Group, Inc. combined to form Esmark Incorporated.

29.     On August 4, 2008, Esmark Incorporated became a wholly-owned subsidiary of OAO Severstal, a corporation located in the Russian Federation.  As a result of this business combination, Esmark Incorporated was renamed Severstal Wheeling Holding Company, Wheeling-Pittsburgh Corporation was renamed Severstal Wheeling Steel Group, Inc. and Wheeling-Pittsburgh Steel Corporation was renamed Severstal Wheeling, Inc.   As such, Severstal Wheeling became the corporate successor in interest to Wheeling-Pittsburgh Steel Corporation.

30.     Despite the corporate changes following the 2003 emergence from bankruptcy, the Wheeling Corrugating Plan and the Salaried Employees Plan continued to remain invested in the WHX Pension Trust.

B.      The Decision to Divide the WHX Pension Trust

31.     On February 1, 2004, Defendant WPN entered into an Investment Consulting Agreement (the "WHX Investment Agreement") with WHX Corporation on behalf of the WHX Pension Trust.  Under the terms of that Agreement, from February 1, 2004 forward, WPN was vested with "complete, unlimited and unrestricted management authority with respect to" the assets in the WHX Pension Trust.  The WHX Investment Agreement was modified by a First

Amendment on May 11, 2007 and by a Second Amendment in or around September 2008. The Investment Consulting Agreement, with the first two Amendments, is attached hereto as **Exhibit D**.

32.     After being notified by Citibank, N.A. that it would no longer serve as trustee of the WHX Pension Trust, WHX Corporation advised Severstal Wheeling that it must transfer the Wheeling Corrugating Plan and the Salaried Employees Plan into a Trust separate and apart from the WHX Pension Trust.

33.     On or about September 29, 2008, the WHX Corporation Retirement Committee and Plaintiff Severstal Retirement Committee jointly requested that Citibank, N.A., the trustee of the WHX Pension Trust, remove the assets of the Wheeling Corrugating Plan and the Salaried Employees Plan from the WHX Pension Trust to a new Severstal Wheeling Pension Plan Trust (the "Severstal Trust"):

> Pursuant to the terms of the respective trust agreements, [the Severstal Wheeling, Inc. Retirement Committee] . . . hereby directs the Trustee to transfer the assets of the [Wheeling Corrugating Plan and the Salaried Employees Plan] from the WHX Pension Plan Trust into the [Severstal Trust].

34.     On or about September 30, 2008, Michael DiClemente ("Mr. DiClemente"), then a member of the Severstal Retirement Committee, informed Mr. Glen Kassan, the chairman of WHX Corporation's Pension Investment Committee, that the assets in the Wheeling Corrugating Plan and the Salaried Employees Plan should be transferred to the Severstal Trust in the same percentage investment allocations as had existed in the WHX Pension Trust. Mr. DiClemente's instructions were as follows:

> Dear Mr. Kassan:
> .  .  .  . Pursuant to Section 4.4 of the aforementioned Trust Agreement, please direct Citibank, N.A. as trustee of the Trust, to transfer [the assets comprising the Wheeling Corrugating Plan and

{V0027989.1}

the Salaried Employees Plan] in the same percentage allocations as existed in the WHX Pension Trust, on or about September 30, 2008, to account no. 312933 at Citibank, N.A., as trustee of the [Severstal Trust].

35.     In other words, Mr. DiClemente requested that the investment portfolios of the Wheeling Corrugating Plan and the Salaried Employees plan remain the same in the Severstal Trust as they had been in the WHX Pension Trust.

36.     As of October 31, 2008, the WHX Pension Trust was heavily diversified and was invested in a total of twenty-one (21) different accounts.  The total value of the WHX Pension Trust at that time was $395,077,777.93.  The largest single investment account in the WHX Pension Trust was invested with Mason Capital Management and contained $90,055,365.39 in assets.

37.     As of October 31, 2008, the total combined value of the Wheeling Corrugating Plan and the Salaried Employees Plan was $38,147,879.00.  As part of the WHX Pension Trust, these assets were diversified as described in Paragraph 36.

38.     On November 1, 2008, the Third Amendment to the WHX Investment Agreement (the "Third Amendment") became effective between Severstal Wheeling, as successor to Wheeling-Pittsburgh Steel Corporation, and WPN.  The Third Amendment is attached hereto as **Exhibit E.**

39.     Under the terms of the Third Amendment, WPN was named the investment manager of the Severstal Trust with sole discretionary management authority over the assets in the Severstal Trust, including the assets of the Wheeling Corrugating Plan and the Salaried Employees Plan.  Moreover, LaBow "ha[d] the primary responsibility for performing the services of the Manager [WPN] with respect to the Investment Fund . . . ." **Exhibit E**, p. 3, ¶ (l).

{V0027989.1}

40.     The Wheeling Corrugating Plan and Salaried Employees Plan specifically provide that any "Investment Manager" (such as WPN and LaBow) "shall be solely liable for all investment actions taken concerning the assets of this Plan." **Exhibit A**, p. 31 ¶ 8.110; **Exhibit B**, p. 29 ¶ 9.11.

41.     In addition, the Third Amendment obligated WPN to manage the Severstal Trust assets in accordance with the Severstal Wheeling Pension Plan Investment Policy (the "Severstal Investment Policy"). The Severstal Investment Policy is attached hereto as **Exhibit F**.

42.     The Severstal Investment Policy became effective on November 1, 2008 and was implemented because the WHX Pension Plan Investment Policy (WHX Investment Policy"), which became effective in March 2004 and applied to the investments in the WHX Pension Trust, needed to be replaced with regard to the Wheeling Corrugating Plan and the Salaried Employees Plan after the Severstal Trust was separated from the WHX Pension Trust. The Severstal Investment Policy is, as to all relevant provisions, including the provisions regarding diversification, identical to the WHX Investment Policy. Thus, the Severstal Investment Policy is a "successor" policy to the WHX Investment Policy.

43.     The Severstal Investment Policy, like the WHX Investment Policy before it, required WPN to, among other things, "ensure that the [Severstal Trust's] assets are well-diversified with respect to the type of assets, investment strategies employed and number of investment managers used." *See* **Exhibit F**, p.2.

C.     <u>Defendants' Failure to Diversify the Severstal Trust</u>

44.     On or about November 3, 2008, Mr. DiClemente authorized Citibank, N.A., as part of the general transfer of assets from the WHX Pension Trust to the Severstal Trust, to

{V0027989.1}

transfer an account allegedly managed by Neuberger Berman, LLC (the "Neuberger Berman Account") from the WHX Pension Trust to the Severstal Trust:

> As part of transferring [the assets of the Wheeling Corrugating Plan and Salaried Employees Plan] from the WHX Corporation trust to Severstal Wheeling's existing trust at Citibank, we direct Citibank to transfer, prior to market opening on November 3, all assets in the Neuberger Berman account . . . to our account . . . .

At the time of this communication, WPN and LaBow had the duty to actively manage the assets in the Severstal Trust.

45.     Also on or about November 3, 2008, James F. McCabe, on behalf of the WHX Pension Administration Committee, advised Citibank, N.A. that all assets in the Neuberger Berman Account were to be transferred from the WHX Pension Trust to the Severstal Trust. In other words, the WHX Pension Trust divested itself entirely from the Neuberger Berman Account.

46.     In accordance with these November 3, 2008 communications, $31,446,845.00 – the entirety of which was invested in the Neuberger Berman account, was transferred from the WHX Pension Trust to the Severstal Trust. The difference between this value and the $38,147,879.00 value of the assets in the Wheeling Corrugating Plan and Salaried Employees Plan as of October 31, 2008 was left in the WHX Pension Trust without the concurrent knowledge or agreement of the Severstal Retirement Committee. Defendants, however, as fiduciaries and investment managers, failed to ensure that the entire difference was fully and immediately transferred from the WHX Pension Trust to the Severstal Trust.

47.     Upon information and belief, Neuberger Berman, LLC was not actively managing the assets in the Neuberger Berman Account. Despite being responsible for the management of the assets in the Severstal Trust pursuant to the Third Amendment, Defendants WPN and LaBow

{V0027989.1}

failed to enter into an agreement with Neuberger Berman, LLC for the management of the assets in the Neuberger Berman Account and/or failed to prudently manage the investments themselves.

48.     At the time the Severstal Retirement Committee requested transfer of the Neuberger Berman Account to the Severstal Trust, the Severstal Retirement Committee intended and expected that either the Severstal Trust would receive only a portion of the Neuberger Berman Account along with a portion of all of the other investments comprising the WHX Pension Trust, or that, if the Severstal Trust would receive the entire Neuberger Berman Account, the Neuberger Berman Account would be liquidated and diversified.  Either way, the Severstal Retirement Committee expected that the Severstal Trust would be appropriately diversified in accordance with the Severstal Investment Policy and ERISA Section 404(a), 29 U.S.C. § 1104(a).

49.     Unbeknownst to any of the Plaintiffs, Defendants WPN and LaBow left the Severstal Trust invested entirely in the Neuberger Berman Account, which, due to Defendants' failure to adequately manage and prudently invest the Severstal Trust assets, was not under active investment management at that time.

50.     Also unbeknownst to any of the Plaintiffs, at the time of the transfer of the Neuberger Berman Account to the Severstal Trust, the Neuberger Berman Account was composed of thirteen stocks, the overwhelming majority of which were energy stocks.  This investment portfolio did not meet the standards of diversification required by the Third Amendment, the relevant Plan Documents, the Severstal Investment Policy, or ERISA Section 404(a), 29 U.S.C. § 1104(a).

{V0027989.1}

51.     Defendant LaBow was a former investment banker with Neuberger Berman, LLC. Upon information and belief, LaBow left the Severstal Trust assets solely invested in the Neuberger Berman Account – which LaBow knew to be undiversified – because of his previous relationship with Neuberger Berman, LLC and/or because of pecuniary or other benefits that were being conferred upon him by Neuberger Berman, LLC.

52.     Defendant LaBow was, at one time, the Chairman of the Board of WHX Corporation.  Upon information and belief, Defendants gave preferential treatment to the WHX Pension Trust over the Severstal Trust because of his prior connections to WHX and because the WHX Pension Trust was substantially larger than the Severstal Trust.   Accordingly, upon information and belief, Defendants transferred the Neuberger Berman Account from the WHX Pension Trust to the Severstal Trust and left the former diversified while failing to diversify the latter because of Defendants' preferential treatment in favor of the WHX Pension Trust.

53.     On or about December 29, 2008, the Severstal Retirement Committee became aware that Defendants WPN and LaBow had left the entirety of the assets in the Severstal Trust invested in the Neuberger Berman Account.

54.     On December 30, 2008, Mr. DiClemente contacted Defendant LaBow via e-mail and informed him that the Severstal Retirement Committee had learned of the complete transfer and of the Neuberger Berman Account solely to the Severstal Trust:

> I just learned yesterday from Mercer that you have allocated your entire position in the Neuberger Berman account solely to the Severstal Wheeling pension plans as part of the transition of the WHX and [Severstal Trust] to separate trusts.
>
> Prior to the transition, you asked me on multiple occasions whether Wheeling wanted to continue to utilize your services and I responded that we definitely desired to do so, with the understanding that you continue to implement the same strategies that you have been using on behalf of both [WHX and Severstal

{V0027989.1}

> Wheeling] when the funds were managed as part of the same
> portfolio . . . .
>
> We are further disturbed that this situation has been compounded
> by the fact that we did not learn until this month that Neuberger
> Berman has not been managing the assets . . . .

55.     At the time of his December 30, 2008 correspondence, Mr. DiClemente was only

aware that the Severstal Trust was invested solely in the Neuberger Berman Account.  He was

not yet aware that the Neuberger Berman Account itself was an undiversified account comprised

almost entirely of energy stocks.  Mr. DiClemente was only made aware of this troubling fact

late in the day on December 30, 2008.

56.     To remedy Defendants' failure to properly diversify, Mr. DiClemente and

Plaintiff Severstal Retirement Committee asked Defendants verbally on or about December 30,

2008, January 7, 2009 and January 16, 2009 and in writing on or about January 20, 2009 to

prepare a written plan to retroactively re-allocate the assets in both the WHX Pension Trust and

the Severstal Trust so that the percentage allotment of the various investments was the same in

both Trusts:

> Confirming our continuing discussions and in accordance with
> ERISA requirements, it is critical that the Severstal Wheeling, Inc.
> (SWI) Pension Plan Trust and its participants continue to benefit
> from a diversified portfolio, equivalent, to the extent feasible, to
> the portfolio that existed prior to the trustee transition that occurred
> as of the beginning of November 2008.  Therefore, we would
> expect that the assets that were allocated between the [WHX
> Pension trust] and the [Severstal Trust] as of the trustee transition
> date will be reallocated to produce two separate portfolios, with the
> [Severstal Trust] continuing its proportionate share of the
> undivided interest in the WHX master trust portfolio prior to the
> transition, recognizing that there may be certain limitations to
> achieving an identical allocation.
>
> Please prepare a written plan to reallocate the assets retroactively
> as of the transition date . . . .

This was consistent with Defendants' ongoing representations to Mr. DiClemente and what Mr. DiClemente intended and expected as a result of the split between the two Trusts.

57.     On or about February 4, 2009, Defendant LaBow, on behalf of Defendant WPN, sent a letter to representatives of Plaintiff Severstal Retirement Committee admitting that it was Defendants' decision, based on alleged "market conditions," to "transfer the entire Neuberger Berman account" to the Severstal Trust.

58.     In that letter, Defendant LaBow indicated that he could not have allocated a *pro rata* share of each investment in the WHX Pension Trust to the Severstal Trust in the first place because he "ran across major roadblocks," with the implication that no such re-allocation was even possible.

59.     Throughout February 2009, Plaintiff Severstal Retirement Committee was in communication with Defendants and with WHX Corporation, asking them to provide information such as a report regarding an audit by J.H. Cohn of the valuation of the assets in both the WHX Pension Trust and the Severstal Trust and all other available financial information on the assets in the WHX Pension Trust as of October 31, 2008.

60.     Defendants WPN and LaBow continued their failure or refusal to properly diversify the Severstal Trust.

D.     <u>The Aftermath of Defendants' Failure to Diversify the Severstal Trust</u>

61.     As of March 31, 2009, the Severstal Trust's investments in the Neuberger Berman Account were valued at $24,276,162.00.  When compared to their value of $31,446,845.00 as of November 3, 2008, the Severstal Trust's holdings in the Neuberger Berman Account were devalued by approximately 22.8% during this time period.

{V0027989.1}

62.     On March 23, 2009, Defendant LaBow left a voicemail message for Sally Doubet King, Plaintiffs' previous counsel, stating that he "still [hadn't] diversified] the Severstal Trust, that he was going to "liquidate the account when I think it's appropriate turning the whole thing into cash and go to diversification . . . ." Defendant LaBow also admitted that "the responsibility is completely mine."

63.     Also on March 23, 2009, Defendant LaBow left a voicemail message for Dennis Halpin, then a member of the Severstal Retirement Committee, admitting that it was his decision that "we're not diversified" and that he was "taking responsibility" and "accept[ed] responsibility."

64.     On March 24, 2009, Defendants WPN and LaBow liquidated the Severstal Trust's holdings in the Neuberger Berman Account.

65.     The assets in the Severstal Trust were not reinvested by Defendants, but were instead left in holdings of cash.

66.     Between March and May 2009, Defendants, despite being given multiple opportunities to do so, failed to reinvest the Severstal Trust assets in a way that comported with the diversification standards of ERISA and the Severstal Investment Policy.

67.     Accordingly, on May 19, 2009, Plaintiff Severstal Retirement Committee terminated the Third Amendment and severed all agreements between Defendant WPN and Plaintiff Severstal Retirement Committee. The termination was justified under Section 18(b)(i) of the Third Amendment because Defendants' failure to properly diversify the Severstal Trust was "conduct which is materially injurious" to Severstal Wheeling.

E.      Indirect Damage to the DB Plan

68.     The DB Plan (the defined benefit plan) was not a part of the WHX Pension Trust or the Severstal Trust and was therefore not directly affected by Defendants' failure to diversify the assets in the Severstal Trust.

69.     However, some of the participants in the DB Plan were also participants in the Salaried Employees Plan, which are linked together in a "floor offset" arrangement. The benefits to which these employees are entitled from the DB Plan are "offset" by the value of their individual accounts in the Salaried Employees Plan.

70.     Accordingly, if the value of the Salaried Employees Plan declines, the value of the individual accounts within the Salaried Employees Plan decline as well, resulting in greater financial liability of the DB Plan based on the reduced size of the participants' offsets.

71.     The DB Plan was required to pay substantially increased benefits that it would not have been obligated to pay had the Salaried Employees Plan not been devalued due to LaBow's actions and omissions.

## VI.     Claims For Relief

A.      Claims for Relief Under ERISA

72.     At all relevant times, Defendants were fiduciaries of the Wheeling Corrugating Plan and the Salaried Employees Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

73.     ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2) provides, in pertinent part, that a civil action may be brought by a fiduciary for relief under ERISA Section 409, 29 U.S.C. § 1109.

{V0027989.1}

74.     ERISA Section 409(a), 29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

75.     ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1), provides, in pertinent part, that fiduciaries are to manage and administer the plan, and the plan's investments solely in the interest of the plan's participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

76.     ERISA Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), specifically obligates a fiduciary to act on behalf of the plan solely for the purpose of providing benefits to plan participants and beneficiaries or for the purpose of defraying the reasonable administrative expenses of the plan.

77.     ERISA Section 406(b), 29 U.S.C. § 1106(b) specifically prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest."

78.     ERISA Section 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C), specifically obligates a fiduciary to diversify "the investments of the plan so as to minimize the risk of large losses . . . ."

{V0027989.1}

## COUNT I

**BREACH OF FIDUCIARY DUTY UNDER SECTION 502(A)(2) OF ERISA BY FAILING
TO LOYALLY MANAGE PLAN ASSETS IN VIOLATION OF ERISA SECTION
404(A)(1)(A) AND 406(B)**

**Severstal Wheeling, Inc. Retirement Committee, Timothy S. Rogers, Vincent D. Assetta,
Melvin Baggett, and William Drew Landon**

**v.**

**All Defendants**

79.     Plaintiffs incorporate the allegations contained in Paragraphs 1 through 78 as if set forth in full herein.

80.     At all relevant times, Defendants were fiduciaries of the Wheeling Corrugating Plan and the Salaried Employees Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

81.     Under ERISA, fiduciaries are required to manage plan assets solely in the interests of the plan's participants and beneficiaries and for the exclusive purpose of providing benefits to plan participants and beneficiaries or to defray the reasonable administrative expenses of the plan.   Moreover, fiduciaries are forbidden to deal with the assets of a plan for their own interest.

82.     During the relevant time period, Defendants breached their duty to loyally manage the assets of the Wheeling Corrugating Plan and the Salaried Employees Plan by, *inter alia*, failing to disclose Defendant LaBow's previous relationship and dealings with Neuberger Berman, LLC, particularly in light of the fact that Defendant LaBow invested the entirety of the Severstal Trust assets transferred on November 3, 2008 in the Neuberger Berman account.

83.     During the relevant time period, Defendants breached their duty to loyally manage the assets of the Wheeling Corrugating Plan and the Salaried Employees Plan by, *inter*

{V0027989.1}

*alia*, by investing the entirety of the Severstal Trust in the Neuberger Berman Account because of Defendant LaBow's previous relationship and dealings with Neuberger Berman, LLC and/or because of pecuniary or other benefits that Defendants were receiving from Neuberger Berman, LLC.  Accordingly, Defendants were not managing the Wheeling Corrugating Plan assets or the Salaried Employees Plan assets solely in the interests of the Plans' participants and beneficiaries.

84.     During the relevant time period, Defendants breached their duty to loyally manage the assets of the Wheeling Corrugating Plan and the Salaried Employees Plan by, *inter alia*, giving preferential treatment to the WHX Pension Trust over the Severstal Trust because of LaBow's prior relationship with WHX and the fact that the WHX Pension Trust was substantially larger than the Severstal Trust.

85.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Wheeling Corrugating Plan and the Salaried Employees Plan, in addition to the participants in both Plans, lost a significant portion of their retirement investment.  Had Defendants invested the assets in the Severstal Trust appropriately and solely in the interests of the Plans' participants and beneficiaries, the Plans' significant losses could have been eliminated or, at the very least, reduced.

86.     Pursuant to ERISA Section 502(a), 29 U.S.C. § 1132(a) and ERISA Section 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Wheeling Corrugating Plan and Salaried Employees Plan caused by Defendants' breach of fiduciary duties alleged in this Count.

87.     Plaintiffs Severstal Retirement Committee, Rogers, Assetta, Baggett and Landon bring this Count in their capacities as named fiduciaries of the Wheeling Corrugating Plan and the Salaried Employees Plan and for the benefit of those Plans.

{V0027989.1}

## COUNT II

**BREACH OF FIDUCIARY DUTY UNDER SECTION 502(A)(2) OF ERISA BY FAILING TO ADEQUATELY DIVERSIFY PLAN ASSETS IN VIOLATION OF ERISA SECTION 404(A)(1)(C).**

**Severstal Wheeling, Inc. Retirement Committee, Timothy S. Rogers, Vincent D. Assetta, Melvin Baggett, and William Drew Landon**

**v.**

**All Defendants**

88.     Plaintiffs incorporate the allegations contained in Paragraphs 1 through 87 as if set forth in full herein.

89.     At all relevant times, Defendants were fiduciaries of the Wheeling Corrugating Plan and the Salaried Employees Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

90.     Under ERISA, fiduciaries are required to adequately diversify plan assets in order to minimize the risk of large losses to plan assets.

91.     During the relevant time period, Defendants breached their fiduciary duties to the Wheeling Corrugating Plan and the Salaried Employees Plan by, *inter alia*:

  a.     permitting all of the assets of the Severstal Trust to be invested in the Neuberger Berman Account as of November 3, 2008;

  b.     by failing to inform Plaintiffs that the assets in the Severstal Trust were allocated solely in the Neuberger Berman Account;

  c.     by failing to inform Plaintiffs that the Neuberger Berman Account itself was an undiversified account comprised almost entirely of energy stocks; and

{V0027989.1}

      d.    by failing to diversify the Severstal Trust after the original transfer of the Neuberger Berman Account was made.

92.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Wheeling Corrugating Plan and the Salaried Employees Plan, in addition to the participants in both Plans, lost a significant portion of their retirement investment.  Had Defendants invested and diversified the assets in the Severstal Trust appropriately, the Plans' significant losses could have been eliminated or, at the very least, reduced.

93.    Pursuant to ERISA Section 502(a), 29 U.S.C. § 1132(a) and ERISA Section 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Wheeling Corrugating Plan and Salaried Employees Plan caused by Defendants' breach of fiduciary duties alleged in this Count.

94.    Plaintiffs Severstal Retirement Committee, Rogers, Assetta, Baggett and Landon bring this Count in their capacities as named fiduciaries of the Wheeling Corrugating Plan and the Salaried Employees Plan and for the benefit of those Plans.

B.    <u>State Law Claims for Relief</u>

## COUNT III

### BREACH OF CONTRACT

### Severstal Wheeling, Inc.

#### v.

### WPN Corporation

95.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 94 as if set forth in full herein.

{V0027989.1}

96.    Plaintiff Severstal Wheeling is a fiduciary of the DB Plan in accordance with ERISA Section 402(a), 29 U.S.C. § 1102(a).

97.    Defendant WPN was not a fiduciary of the DB Plan and had no fiduciary obligations to the DB Plan.

98.    Pursuant to the Third Amendment to the WHX Corporation Investment Consulting Agreement (renamed the Severstal Wheeling, Inc. Investment Management Agreement), entered into between Plaintiff Severstal Wheeling and Defendant WPN, WPN was obligated to manage the assets of the Severstal Trust "in accordance with the provisions and requirements provided in the investment guidelines of the Pension Plans," a reference to the Severstal Investment Policy, which was effective on November 1, 2008 and was a successor to the WHX Investment Policy, which was effective in March 2004 and is essentially identical in all material respects to the Severstal Investment Policy.  **Exhibit F**.

99.    The Severstal Investment Policy required WPN to "ensure that the Trust's assets are well-diversified with respect to the type of assets . . . investment strategies employed and number of investment managers used." **Exhibit F** p. 2.

100.    By investing the entirety of the Severstal Trust in the Neuberger Berman Account and leaving the assets in that Account for almost five months, WPN breached its contractual commitments to Plaintiff Severstal Wheeling.

101.    The Severstal Investment Policy further required that WPN ensure that monthly listings of all individual security holdings at cost and market be provided to the Severstal Retirement Committee.  WPN failed to provide such reports on a monthly basis.

102.    The Severstal Investment Policy likewise provided that the maximum amount of equities to be invested with a single manager is 25% of the total portfolio.  Defendant WPN

{V0027989.1}

ignored this provision and invested the entirety of the Severstal Trust equities in the Neuberger Berman Account – i.e. with a single investment manager.

103.    The breach of these contractual commitments caused substantial losses to the Salaried Employees Plan, which are the subject of Counts I and II *supra*.

104.    Because the Salaried Employees Plan was linked to the DB Plan in a floor offset arrangement, the losses to the Salaried Employees Plan caused the DB Plan to pay out more in benefits than it otherwise should have been required to pay and increased Severstal Wheeling's funding obligations to the DB Plan.

105.    The DB Plan's losses in this regard were the direct and proximate result of WPN's breach of its contractual obligations to Severstal Wheeling.  Had WPN performed its contractual obligations as listed, Severstal Wheeling's funding obligations to the DB Plan would not have increased to the level that they did.

106.    Plaintiff Severstal Wheeling brings this Count in its own capacity and as fiduciary of the DB Plan and for the benefit of the DB Plan.

<h2 style="text-align:center"><u>COUNT IV</u></h2>

<strong>PROFESSIONAL NEGLIGENCE</strong>

<strong>Severstal Wheeling, Inc.</strong>

<strong>v.</strong>

<strong>Ronald LaBow</strong>

107.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 106 as if set forth in full herein.

108.    Plaintiff Severstal Wheeling is a fiduciary of the DB Plan in accordance with ERISA Section 402(a), 29 U.S.C. § 1102(a).

{V0027989.1}

109.   Defendant LaBow was not a fiduciary of the DB Plan and had no fiduciary obligations to the DB Plan.

110.   In managing the assets of the Salaried Employees Plan, LaBow had a duty to manage those assets as a reasonably prudent investment manager would have done under the circumstances.

111.   By failing to diversify the assets in the Salaried Employees Plan, Defendant LaBow breached his duty because no reasonably prudent investment manager would have invested the Salaried Employees Plan assets solely in the Neuberger Berman Account, which was composed almost entirely of energy stocks, for a period of almost five months.

112.   The breach of this duty caused substantial losses to the Salaried Employees Plan, which are the subject of Counts I and II *supra*.

113.   Because the Salaried Employees Plan was linked to the DB Plan in a floor offset arrangement, the losses to the Salaried Employees Plan caused the DB Plan to pay out more in benefits than it otherwise would have been required to pay.

114.   The DB Plan's losses in this regard were the direct and proximate result of Defendant LaBow's breach of his duty to prudently manage the Severstal Trust investments. Had Defendant LaBow performed his duty as required, the DB Plan would not have suffered the losses that it suffered.

115.   Plaintiff Severstal Wheeling, Inc. brings this Count in its capacity as fiduciary of the DB Plan and for the benefit of the DB Plan.

{V0027989.1}

## VII.   **Prayer for Relief**

WHEREFORE, Plaintiffs pray for the following relief:

(A)   That this Court order Defendants to restore to the Wheeling Corrugating Plan and the Salaried Employees Plan their losses – in an amount to be proven at trial – as a result of Defendants' breach of fiduciary duties to both Plans;

(B)   That this Court enter declaratory and injunctive relief as necessary and appropriate, including restoring all losses to the Wheeling Corrugating Plan and the Salaried Employees Plan as a result of Defendants' breach of fiduciary duties to both Plans;

(C)   That this Court order Defendant WPN to restore to the DB Plan its losses – in an amount to be proven at trial – as a result of Defendant WPN's breach of the Third Amendment to the Severstal Wheeling, Inc. Investment Management Agreement;

(D)   That this Court order Defendant LaBow to restore to the DB Plan its losses – in an amount to be proven at trial – as a result of Defendant LaBow's breach of his duty to prudently manage the investments of the Severstal Trust;

(E)   That this Court order any further relief which the Court deems to be just and appropriate, including taxable costs and interest, as provided by law.

{V0027989.1}

(F)     That this Court order Defendants to pay Plaintiff's reasonable attorney's fees incurred as a result of initiating and prosecuting this action in accordance with ERISA Section 502(g)(1).

Dated:  February 4, 2010                          Respectfully submitted,
        White Plains, New York


                                                  Steven R. Kramer, Esq. (SK 2097)
                                                  Eckert Seamans Cherin & Mellott, LLC
                                                  10 Bank Street, Suite 1061
                                                  White Plains, New York  10606
                                                  Tel:    914-949-3760
                                                  Fax:    914-949-5424

                                                        and

                                                  Mark Willard, Esq.
                                                  Clare Gallagher, Esq.
                                                  Sandra Mihok, Esq.
                                                  Andrew T. Quesnelle
                                                  Eckert Seamans Cherin & Mellott, LLC
                                                  600 Grant Street, 44th Floor
                                                  Pittsburgh, PA  15219
                                                  Tel:    412-566-6000
                                                  Fax:    412-566-6099

                                                  Attorneys for Plaintiffs

{V0027989.1}