UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
                                          :

|  |  |
|---|---|
| SEVERSTAL WHEELING, INC. RETIREMENT COMMITTEE, TIMOTHY S. ROGERS, MELVIN BAGGETT and WILLIAM DREW LANDON, as named fiduciaries of the Wheeling Corrugating Company Retirement Security Plan, the Salaried Employees' Pension Plan of Severstal Wheeling, Inc. and SEVERSTAL WHEELING, INC., as named fiduciary of the Severstal Wheeling, Inc. Pension Plan, | : <br> : <br> : <br> :   Index No. 10 Civ.  954 (LTS) (GWG) <br> : <br> : <br> : <br> : |
| Plaintiffs, | : |
| - against - | : |
| WPN CORPORATION, in its own capacity and as named fiduciary of the Wheeling Corrugating Company Retirement Security Plan and the Salaried Employees' Pension Plan of Severstal Wheeling, Inc.; RONALD LABOW, in his Individual capacity and as named fiduciary of the Wheeling Corrugating Company Retirement Security Plan and the Salaried Employees' Pension Plan of Severstal Wheeling, Inc. and WHX CORPORATION, | : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : |

-----------------------------------------------------------------------x


# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION
## FOR SANCTIONS AGAINST WHX'S COUNSEL

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................... 1

PROCEDURAL HISTORY.............................................................................................. 2

    A.   The Complaint And Its First Amendment ..................................................... 2

    B.   The Second Amended Complaint ................................................................... 3

    C.   The Court Dismisses All Claims Asserted Against WHX............................. 3

    D.   Plaintiffs Motion to Amend And WHX's Related Motion Pursuant to Rule 11 ........... 4

    E.   The Non-Party Testimony Subpoenas ........................................................... 4

    F.   The Court's Discovery Order......................................................................... 5

ARGUMENT ................................................................................................................... 5

   I.   THE LEGAL STANDARD APPLICABLE TO PLAINTIFFS' MOTION...................... 5

  II.   PLAINTIFFS' STRATEGY IN CONNECTION WITH
       MR. KASSAN'S DEPOSITION. ............................................................................ 7

  III.   MR. KAPLAN'S CONDUCT WAS NECESSARY AND APPROPRIATE. .................. 8

    A.   Mr. Kaplan Properly Conferred With The Witness On One Occasion While No
         Question Was Pending During The Deposition............................................. 8

    B.   Relevance Objections Were Necessary And Appropriate. .......................... 10

    C.   Mr. Kaplan Properly Advised The Witness Not To Answer Three Questions
         Posed In Bad Faith And In An Attempt To Annoy,  Embarrass, Or Oppress
         The Witness. ................................................................................................ 12

  IV.   PLAINTIFFS FAIL TO ESTABLISH THAT MR. KAPLAN'S CONDUCT
       WARRANTS SANCTIONS UNDER 28 U.S.C § 1927 OR THE COURT'S
       INHERENT POWER...................................................................................... 16

   V.   PLAINTIFFS FAIL TO ESTABLISH MR. KAPLAN'S CONDUCT
       WARRANTS SANCTIONS UNDER RULE 30(D)(2) .................................................. 19

CONCLUSION............................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Acri v. Golden Triangle Mgmt. Acceptance Co.*,
  1994 Pa. Dist. & Cnty. Dec. LEXIS 150 (1994).....................................................................11

*Am. Fun & Toy Creators, Inc. v. Gemmy Indus., Inc.*,
  1997 U.S. Dist. LEXIS 12419 (S.D.N.Y. 1997)............................................................12, 19

*Birdine v. City of Coatesville*,
  225 F.R.D. 157 (E.D. Pa. 2004)..................................................................................11, 15

*Brignoli v. Balch, Hardy & Scheinman, Inc.*,
  126 F.R.D. 462 (S.D.N.Y. 1989) ......................................................................................17

*Ethicon Endo-Surgery v. U.S. Surgical Corp.*,
  160 F.R.D. 98 (S.D Ohio 1995) ........................................................................................11

*Fashion Boutique of Short Hills, Inc. v. Fendi, USA, Inc.*,
  1994 U.S. Dist. LEXIS 4024 (S.D.N.Y. Apr. 4, 1994)............................................................11

*Hall v. Clifton Precision*,
  150 F.R.D. 525 (E.D. Pa. 1993).......................................................................................10

*Henry v. Champlain Enters., Inc.*,
  212 F.R.D. 73 (N.D.N.Y. 2003)........................................................................................10

*Humanscale Corp. v. Compx Int'l Inc.*,
  2010 U.S. Dist. LEXIS 83876 (E.D. Va. Aug. 16, 2010).........................................................6

*In Re Stratosphere Corp. Secs. Litig.*,
  182 F.R.D. 614 (D. Nev. 1998)...............................................................................10, 11, 15

*McKinley Infuser, Inc. v. Zdeb*,
  200 F.R.D. 648 (D. Colo. 2001) ......................................................................................10

*Morales v. Zondo, Inc.*,
  204 F.R.D. 50 (S.D.N.Y. May 3, 2001)..........................................................................*passim*

*Musto v. Trans. Workers Union of Am.*,
  2009 U.S. Dist. LEXIS 3174 (E.D.N.Y. Jan. 9, 2009) ...........................................................8

*Namoury v. Tibbetts*,
  2007 U.S. Dist. LEXIS 13235 (D. Conn. Feb. 26, 2007) .......................................................12

*Okoumou v. Safe Horizon*,
  2004 U.S. Dist. LEXIS 19120 (S.D.N.Y. Sept. 17, 2004)....................................................8, 21

*Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*,
2009 U.S. Dist. LEXIS 104020 (E.D.N.Y. Nov. 9, 2009)..................................................12, 15

*Phillips v. Mfrs. Hanover Trust Co.*,
1994 U.S. Dist. LEXIS 3748 (S.D.N.Y. Mar. 29, 1994) ............................... 5, 6, 16, 17, 18, 20

*Revson v. Cinque & Cinque, P.C.*,
221 F.3d 71 (2d Cir. 2000)......................................................................................................... 6

*Riddell Sports Inc. v. Brooks*,
158 F.R.D. 555 (S.D.N.Y. 1994) .............................................................................................. 12

*Saylavee LLC v. Hockler*,
2005 U.S. Dist. LEXIS 39802 (D. Conn. June 14, 2005)......................................................... 15

*Sicurelli v. Jeneric/Pentron, Inc.*,
2005 U.S. Dist. LEXIS 38943 (E.D.N.Y. Dec. 30, 2005) ................................... 16, 18, 19, 20

*SS&J Morris, Inc. v. I. Appel Corp.*,
2000 U.S. Dist. LEXIS 10381 (S.D.N.Y. July 26, 2000) ........................................................ 17

*Synventive Molding Solutions, Inc. v. Husky Injection Molding Sys., Inc.*,
262 F.R.D. 365 (D. Vt. March 13, 2009)............................................................................. 6, 21

*U.S. v. Int'l Bhd. of Teamsters*,
948 F.2d 1338 (2d Cir. 1991)..................................................................................................... 6

*Unique Concepts, Inc. v. Brown*,
115 F.R.D. 292 (S.D.N.Y. 1987) ....................................................................................... 16, 18

<u>Statutes</u>

28 U.S.C § 1927..............................................................................................................*passim*

<u>Rules</u>

Federal Rule of Civil Procedure Rule 11 ...................................................................................... 1

Federal Rule of Civil Procedure Rule 30...........................................................................*passim*

Howard J. Kaplan, Esq. and Arkin Kaplan Rice LLP respectfully submit this memorandum of law in opposition to Plaintiffs' motion for sanctions.

## PRELIMINARY STATEMENT

We respectfully submit that Mr. Kaplan's conduct fully complied with the rules of this Court and that Plaintiffs' request for sanctions is baseless.  Instead, the instant motion is a tactic directed at deflecting attention from the pending Rule 11 motion filed by Handy & Harman, Ltd. ("WHX")[1] against Plaintiffs and their counsel.

Mr. Kassan's deposition was not without contention.  Plaintiffs fail to acknowledge, however, that this was driven by Plaintiffs' examination counsel, Mark Willard – who conducted an examination marred by his own improprieties, including:

- Disparaging Mr. Kassan directly for reasons that remain to this day unclear;

- Repeating the same questions multiple times in a transparent attempt to get Mr. Kassan to change his testimony;

- Mischaracterizing Mr. Kassan's prior testimony through his questions and his comments;

- Incredulous responses to Mr. Kassan;

- Condemning WHX and Arkin Kaplan Rice LLP for purported discovery abuses, despite having never raised such points with the firm prior to – or after – Mr. Kassan's deposition;

- Asking for confidential information relating to WHX's investment strategies that is objectively irrelevant to this case; and

- Seeking to confuse Mr. Kassan by asking misleading questions and questioning him about incomplete exhibits.

Mr. Willard's conduct at Mr. Kassan's deposition was inappropriate and discourteous. Mr. Kaplan's responses to the same, whether by objection or his instructions to the witness, were

---

[1]     The corporate predecessor of Handy & Harman, Ltd. is WHX Corporation ("WHX").  Because Plaintiffs' motion for sanctions and the documents in this case refer to "WHX," that name will be used herein.

measured and appropriate.  That this application is merely a litigation tactic is further

demonstrated by Plaintiffs' failure to identify any harm they have suffered as a result of the

objections and instructions at the deposition.  Indeed, Plaintiffs fail to argue they suffered any

prejudice whatsoever in connection with the conduct about which they now complain.  Nor do

Plaintiffs make any effort to compel any further discovery from WHX's Chief Executive Officer

Glen Kassan on the grounds that Mr. Kaplan obstructed relevant testimony.  To the contrary,

Plaintiffs' request for sanctions is supported by nothing more than inflammatory rhetoric and

woefully mischaracterized snippets of transcript.

     Plaintiffs' wasteful and patently frivolous application should be rejected in its entirety.

### PROCEDURAL HISTORY

**A.**     **The Complaint And Its First Amendment**

     On February 5, 2010, Plaintiffs filed suit against Defendants WPN Corporation and

Ronald LaBow, each of whom purportedly acted as Plaintiffs' investment advisor.  Plaintiffs

claim WPN and LaBow breached fiduciary duties by improperly directing the transfer of certain

assets from the WHX Pension Plan Trust (for which WPN and LaBow also acted as investment

managers) to a separate account held by SWI (hereinafter, the "Severstal Trust").  (*See* Compl.

¶¶ 83-84.)  Plaintiffs further allege that WPN and LaBow failed to diversify these assets after this

transfer (*id.* ¶ 91), and that, as a result, these assets declined in value in an amount of

approximately $7 million.[2]  (*Id.* ¶ 46.)

     On May 7, 2010, Plaintiffs filed a First Amended Complaint against these same

defendants.  [*See* Docket No. 29.]

---

[2]     It is undisputed that the assets at issue were publicly traded securities that Plaintiffs could have sold in the open market at any time.

**B.**     <u>The Second Amended Complaint</u>

On November 15, 2010, Plaintiffs filed a Second Amended Complaint ("SAC") adding

WHX as a defendant.  The SAC alleged that WHX breached purported fiduciary duties owed to

Plaintiffs upon authorizing its Trustee Citibank to transfer the assets at issue to the Severstal

Trust.  (SAC ¶¶ 108-109.)  Plaintiffs further claimed that WHX somehow "mismanaged" such

assets (even though WHX had no authority over such assets after this transfer).  (*See id.* ¶ 117.)

Finally, Plaintiffs alleged that WHX was liable as a non-fiduciary for allegedly "knowingly

participating" in WPN's and LaBow's alleged fiduciary breaches – even though binding

precedent in this Circuit precluded such claim.  (*See id.* ¶¶ 122-27.)

WHX thereafter filed a timely motion to dismiss all claims asserted against it.  [*See*

Docket Nos. 59 & 60.]

**C.**     <u>The Court Dismisses All Claims Asserted Against WHX</u>

On September 1, 2011, this Court granted WHX's motion to dismiss.  [*See* Docket No.

72.]  The Court noted that Plaintiffs' own allegations confirm that SWI Retirement Committee

member Michael DiClemente directed the transfer of the assets at issue from the WHX Pension

Plan Trust to the Severstal Trust on November 3, 2008.  (*Id.* at 5.)  The Court further recognized

that the SAC expressly alleges this transfer was accomplished at the "explicit instructions" of

Plaintiffs' own alleged investment advisor, WPN – which the SAC alleges was "vested with *sole*

authority to manage or dispose of the assets in [SWI's pension] plans."  (*Id.* at 4-5, 24; *id.*, Ex. A,

emphasis added.)

Finally, the Court concluded Plaintiffs' pleading "at no time suggests that WHX had the

legal authority to make any decision concerning management or disposition of [SWI's] assets or

the practical ability to effectuate any such decision."  (*Id.* at 25.)  In this respect, the Court

concluded that "[t]he mere act of providing the authorization needed to effectuate the

3

instructions of the plan administrator" did not render WHX a fiduciary to SWI in respect to the disposition of the assets at issue.  (*Id.*)  The Court did not grant Plaintiff leave to replead.

### D.    **Plaintiffs Motion to Amend And WHX's Related Motion Pursuant to Rule 11**

On September 30, 2011, Plaintiffs (again) moved to amend their pleading.  [*See* Docket Nos. 88 & 89.]

Critically, Plaintiffs' proposed Third Amended Complaint ("TAC") expressly names Mr. Kassan and James McCabe (WHX's Chief Financial Officer) as defendants.  [*See* Docket No. 88, Ex. A-1.]  The proposed TAC does not otherwise consequentially modify any factual allegations related to the claims previously charged to WHX and already dismissed by this Court.[3]

On October 3, 2011, WHX opposed Plaintiffs' Motion to Amend.  [*See* Docket No. 90.] On December 23, 2011, WHX filed a Motion for Sanctions against Plaintiffs and their counsel.[4] [*See* Docket Nos. 102, 106 & 107.]  Plaintiffs' Motion to Amend and WHX's Motion for Sanctions remain *sub judice.*

### E.    **The Non-Party Testimony Subpoenas**

In November, 2011, Plaintiffs served non-party testimony subpoenas on Mr. Kassan, Mr. McCabe, and former WHX employee David Riposo.  (*See* Davidian Aff. ¶ 12.)  On December 14, 2011, the parties participated in a meet-and-confer to address these, and in particular, WHX's position that Messrs. Kassan's and McCabe's depositions should be deferred until after the deposition of Mr. Riposo – who directly liaised with Plaintiffs during the relevant time period. (*Id.* ¶ 13.)  WHX noted that testimony from all three (3) executives would likely be duplicative. (*Id.* ¶ 14.)  WHX clearly noted its position that any effort to take discovery in connection with

---

[3]         [*See* Docket No. 90 at 1, 19.]  Plaintiffs did modify their alleged legal theories of recovery (in the absence of any explanation as to why these are advanced well over one year after Plaintiffs initially commenced this action).

[4]         Prior to filing the Rule 11 Motion now pending, WHX sought to resolve the issue informally on no less than eight (8) separate occasions.  (*See* Affirmation of Deana Davidian, dated April 11, 2012 ("Davidian Aff."), ¶¶ 3, 8, 11.)

claims that were dismissed or otherwise not permitted by the Court (such as those set forth in the Motion to Amend) would be improper.  (*Id.*)

Plaintiffs admitted during this meet-and-confer that Mr. Kassan's deposition would necessarily be "more focused" than Mr. Riposo's deposition and restricted to:  (i) the time period prior to the transfer at issue; and (ii) WHX's purported agreement to retroactively reallocate these assets subsequent to their transfer.  (*Id*. ¶ 15.)  Plaintiffs further agreed Mr. McCabe's testimony might, in fact, be obviated in its entirety.  (*Id.*)  Plaintiffs would not, however, defer Messrs. Kassan and McCabe until after Mr. Riposo gave testimony, and instead sought judicial intervention.  (*Id.*)

**F.      The Court's Discovery Order**

By letter dated December 23, 2011, Plaintiffs asked this Court for a conference in connection with a motion to compel testimony from Messrs. Kassan and McCabe.  [*See* Docket No. 109.]  WHX responded to Plaintiffs' application by letter dated January 6, 2012.  (*See* Davidian Aff. ¶ 16.)

On January 20, 2012, the Court ordered Messrs. Kassan and McCabe to appear for depositions.  The Court's Order expressly indicated that this was because said individuals may possess information "relevant" to this case.  [*See* Docket No. 117.]

**ARGUMENT**

**I.      THE LEGAL STANDARD APPLICABLE TO PLAINTIFFS' MOTION.**

Sanctions pursuant to 28 U.S.C. § 1927 are only warranted against an attorney "who so multiplies the proceedings in any case to increase costs unreasonably and vexatiously . . . ."  28 U.S.C. § 1927.  The Court's power to impose sanctions under the statute and its inherent power "is wielded with restraint," *Phillips v. Mfrs. Hanover Trust Co*., 1994 U.S. Dist. LEXIS 3748, at

*6 (S.D.N.Y. Mar. 29, 1994), and requires a "particularized showing of bad faith."[5]  *See U.S. v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) ("[b]ad faith is the touchstone of an award under [28 U.S.C. § 1927]" and "a particularized showing of bad faith [is required] to justify the use of the court's inherent power" to impose sanctions); *Phillips*, 1994 U.S. Dist. LEXIS 3748, at *4-6 (same); *see also Humanscale Corp. v. Compx Int'l Inc.*, 2010 U.S. Dist. LEXIS 83876, at *9-10 (E.D. Va. Aug. 16, 2010) (the court's inherent power to sanction "ought to be exercised with great caution, in circumstances such as those involving the very temple of justice [being] defiled") (citation and quotation marks omitted).  To impose sanctions under the statute or its inherent power, a court "must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes."  *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) (citation and quotation marks omitted).

Federal Rule of Civil Procedure 30 applies a similar standard, allowing sanctions for conduct that has "frustrated the fair examination of the deponent."  *Morales v. Zondo, Inc*., 204 F.R.D. 50, 53 (S.D.N.Y. May 3, 2001) (citing FED. R. CIV. P. 30(d)(2).)  Courts typically do not impose sanctions under Rule 30 unless examining counsel is prevented from completing the deposition or the deposition is ultimately rendered "worthless."  *See Phillips*, 1994 U.S. Dist. LEXIS 3748, at *11 (declining to impose sanctions under Rule 30 where opposing counsel's voluminous, unwarranted and often argumentative objections "verge[d] on frustrating the fair examination" of the deponent, but examining counsel was not prevented from completing the deposition); *Synventive Molding Solutions, Inc. v. Husky Injection Molding Sys., Inc*., 262 F.R.D. 365, 375 (D. Vt. March 13, 2009) ("Although [opposing counsel] may have, on occasion, crossed the line between zealous advocacy and deliberate frustration of the deposition, her

---

[5]       The only meaningful difference between 28 U.S.C. § 1927 and the Court's inherent power is that the former allows for sanctions only against attorneys, while the latter allows for sanctions against a party, its attorney, or both.  *See Phillips*, 1994 U.S. Dist. LEXIS 3748, at *6 (citation omitted).

conduct does not warrant sanctions under Rule 30" because the deposition was not rendered "worthless.")

## II.    PLAINTIFFS' STRATEGY IN CONNECTION WITH MR. KASSAN'S DEPOSITION.

At the outset, it bears noting that Plaintiffs do not deny at any point that they attempted to use Mr. Kassan's deposition to obtain information that relates to:  (i) the claims set forth by their pending Motion to Amend; and (ii) those already dismissed by this Court.  The witness addressed his discomfort with this point immediately – indicating that while Mr. Kaplan represented him in his corporate capacity, Mr. Kassan would need to retain counsel personally in the event this was, in fact, Plaintiffs' objective.  (*See* Kassan Tr. at 19:18-25.)

In response to Mr. Kassan's concerns, Mr. Willard advised Mr. Kassan that his appearance was pursuant to a Court Order.  (*Id.* at 21:11-13.)  Mr. Willard then mischaracterized this Court's ruling, stating that "[t]here are no restrictions on [Mr. Kassan's] testimony . . . ." (*Id.* at 21:20-22.)  Not surprisingly, Mr. Kaplan disagreed, indicating that Plaintiffs are, in fact, limited to what is relevant to the case.  (*Id*. at 16:16-20.)  Mr. Kaplan then suggested calling the Court to resolve the issue.  (*Id*. at 22:6-12.)

Mr. Willard declined.   (*Id.* at 23:11-17.)  Thereafter, Mr. Willard appears on approximately 47% (102 pages out of 215) of the transcript with questions directed at gathering information in aid of the previously dismissed and newly proposed claims against the WHX Parties.  Were this not enough, Mr. Willard also criticized the witness through argumentative and improper comments.  *See* Exhibit A hereto (describing these and other issues that lead to protracted colloquy between the parties).

Mr. Willard's conduct provides the appropriate backdrop for the allegations now made against Mr. Kaplan and Arkin Kaplan Rice LLP.

**III.     MR. KAPLAN'S CONDUCT WAS NECESSARY AND APPROPRIATE.**

      **A.     Mr. Kaplan Properly Conferred With The Witness On One
<u>Occasion While No Question Was Pending During The Deposition.</u>**

The Local Rules of the United States District Court for the Southern District of New

York provide that **"*[a]n attorney*** for a deponent ***shall not initiate*** a private conference with the

deponent ***while a deposition question is pending***, except for the purpose of determining whether

a privilege should be asserted." *See* S.D.N.Y. Local Civil Rule 30.4 (emphasis added). This

Court has confirmed that "consultation between counsel and a witness at a deposition raises

questions ***only when the consultation is initiated by counsel***." *Okoumou v. Safe Horizon*, 2004

U.S. Dist. LEXIS 19120, at *5 (S.D.N.Y. Sept. 17, 2004) (emphasis added); *see also Musto v.

Trans. Workers Union of Am.*, 2009 U.S. Dist. LEXIS 3174, at *5 n. 3 (E.D.N.Y. Jan. 9, 2009)

(same). By contrast, "[a] witness is generally free to consult with counsel ***at any time*** during a

deposition." *See Okoumou*, 2004 U.S. Dist. LEXIS 19120, at *5 (emphasis added).

Here, Plaintiffs make much about a consultation initiated by Mr. Kassan – not Mr.

Kaplan. (*See* Pls. Mem. at 12-13.) On this basis alone, Plaintiffs' request for sanctions should

be denied. *See Okoumou*, 2004 U.S. Dist. LEXIS 19120, at *5; *Musto*, 2009 U.S. Dist. LEXIS

3174, at *5 n. 3.

Yet even if this were not the case, the circumstances prompting Mr. Kassan's request for

a consultation with Mr. Kaplan confirm the impropriety of Plaintiffs' complaint on the point.

> Q:     Can you recall any instance where Mr. LaBow recommended an investment or
> investment strategy that the WHX Pension Investment Committee refused or
> declined to follow?
>
> A:     There were a number of instances where not only did we decline, but Mr. LaBow
> withdrew the strategy because we couldn't work it out so that the strategy
> complied with ERISA.
>
> Q:     Can you think of an instance when that occurred?

.   .   .

MR. KAPLAN: I'm going to object.  What does this have to do, again, counsel, at all with this case?  Even with your dismissal.  I mean, this is not relevant to anything.

MR. WILLARD: Your objection is to relevance.

MR. KAPLAN: Well, I'm going to instruct him not to answer, unless I hear some basis for this.  What I think you're doing is fishing around at issues that are not relevant to this case at all.

(Kassan Tr. at 142:17-143:19.)

Mr. Willard did not dispute the lack of relevancy or otherwise contend his question is relevant to this case.  Instead, he simply stated:  "Well, let me just move on," and repeated the same question.  (*Id.* at 144:3-7.)  Mr. Kaplan (again) requested that Mr. Willard explain the relevance of this question.  (*Id.* at 144:8-15.)  Mr. Kaplan also noted that Mr. Willard was harassing the witness, and that "[t]he fact that [Mr. Willard was] not even willing to state on the record [the relevance of this question] is really quite disturbing at this point."  (*Id.* at 145:13-20.) Nonetheless, Mr. Kaplan allowed the witness to answer and directed the court reporter to read back the question.  (*Id.* at 146:14-19.)  After the court reporter read back the question, Mr. Willard noted that the witness had already answered it.  ***At that point, there was no question pending, and the witness initiated a private conference with Mr. Kaplan***:

MR. KAPLAN: You know, listen, based on that, let's get this question answered, okay, on this one issue. All right.  Let's have the question read back.

(Whereupon, the requested portion was read by the reporter.)

MR. WILLARD: Well, the witness has already answered that question.

.   .   .

THE WITNESS: Can we step out?

MR. KAPLAN: All right.

(*Id.* at 146:14-147:14.)

9

Mr. Kaplan and the witness conferred for one minute.  (*Id.* at 147:15-18, noting that

counsel and the witness left the room at 2:16 p.m. and the proceedings resumed at 2:17 p.m.)

The witness then confirmed he could not remember the details of any instance where the WHX

Pension Investment Committee declined to follow an investment or investment strategy

recommended by Mr. LaBow.  (*Id.* at 147:23.)  Because the witness – not Mr. Kaplan – initiated

this conference (and no question was pending at that time), it was appropriate to confer at Mr.

Kassan's request.  Plaintiffs' contention otherwise is wrong and reflects a mischaracterization of

the record.

### B.      Relevance Objections Were Necessary And Appropriate.

The Federal Rules of Civil Procedure provide that "[a]n objection at the time of the

examination – whether to evidence, to a party's conduct, to the officer's qualifications, to the

manner of taking the deposition, *or to any other aspect of the deposition* – must be noted on the

record . . . ."  FED. R. CIV. P. 30(c)(2).  The 1993 Advisory Committee Notes to Rule 30 do not

prohibit relevance objections; instead, such objections "should be kept to a minimum."  FED. R.

CIV. P. 30(d), 1993 Advisory Committee Notes.

Plaintiffs' argument to the contrary is without merit.  In support, Plaintiffs rely on *Hall v.*

*Clifton Precision*, 150 F.R.D. 525 (E.D. Pa. 1993).  (*See* Pls. Mem. at 4, 22.)  But *Hall* has not

been followed by the Second Circuit or the Southern District of New York, and, in fact, has been

widely criticized by other courts.  *See Henry v. Champlain Enters., Inc*., 212 F.R.D. 73, 92

(N.D.N.Y. 2003) (noting that *Hall* "has not been followed by the Second Circuit or by any

district court within the circuit," and is "highly criticized elsewhere"); *McKinley Infuser, Inc. v.*

*Zdeb*, 200 F.R.D. 648, 650 (D. Colo. 2001) ("The *Hall* case has met with substantial, and I

believe justified, criticism."*); In Re Stratosphere Corp. Secs. Litig*., 182 F.R.D. 614, 621 (D. Nev.

1998) (finding that "the *Hall* decision goes too far and its strict adherence could violate the right

to counsel," and noting that "[a] party may object to an irrelevant line of question" at a deposition) (citation omitted).  Indeed, even the Eastern District of Pennsylvania disavowed it, finding that "*Hall* goes too far in forbidding an attorney who defends a deposition . . . from making most objections . . . ." *See Birdine v. City of Coatesville*, 225 F.R.D. 157, 158-59 (E.D. Pa. 2004); *see also Acri v. Golden Triangle Mgmt. Acceptance Co*., 1994 Pa. Dist. & Cnty. Dec. LEXIS 150 (1994) (refusing to implement the *Hall* guidelines because, *inter alia*, they prohibit counsel from raising objections that discovery rules specifically allow and warning of the danger of requiring a deponent to answer questions that bear no relevance whatsoever to the case).

Here, Mr. Kaplan kept his relevance objections to a minimum, objecting on the grounds of relevance to ***only seven (7) questions.***[6]  *See* Exhibit B hereto (describing the specifics of each relevance objection).  This is despite the fact that Mr. Willard appears on approximately 47% (102 pages out of 215) of the transcript with questions directed at gathering information in aid of previously dismissed and newly proposed claims against the WHX Parties.  We respectfully submit that Mr. Kaplan's relevance objections were necessary and appropriate.  *See, e.g.*, *Fashion Boutique of Short Hills, Inc. v. Fendi, USA, Inc*., 1994 U.S. Dist. LEXIS 4024, at *7 (S.D.N.Y. Apr. 4, 1994) (directing the parties to comply with the court's procedures, which permitted relevance objections at depositions); *Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995) ("Where irrelevant or repetitious questioning by interrogating counsel occurs [at a deposition], the appropriate course for opposing counsel is to enter an objection."); *In Re Stratosphere Corp. Secs. Litig*., 182 F.R.D. at 621 (noting that "a party may object to an irrelevant line of question" at a deposition).  As further proof of the soundness of Mr.

---

[6]      In each instance, Mr. Kaplan asked Mr. Willard to explain the relevance of these questions, but Mr. Willard either refused to do so (*see, e.g.,* Kassan Tr. at 143:24-144:4), or gave an explanation that failed to suggest these questions were even remotely relevant to this case.  (*See, e.g., id*. at 145:23-146:11, 164:10-13.)

Kaplan's position, Plaintiffs do not argue that they were in any way prejudiced as a consequence of Mr. Kaplan's objections.

### C.    Mr. Kaplan Properly Advised The Witness Not To Answer Three Questions Posed In Bad Faith And In An Attempt To Annoy, Embarrass, Or Oppress The Witness.

It is well-settled that counsel may instruct a witness not to answer "when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or *to protect a witness from examination 'being conducted in bad faith or in such a manner as to annoy, embarrass, or oppress the deponent or party.'"*[7]  *Morales*, 204 F.R.D. at 52 (citing FED. R. CIV. P. 30(d)(1) & (3)); *see also Am. Fun & Toy Creators, Inc. v. Gemmy Indus., Inc.*, 1997 U.S. Dist. LEXIS 12419, at *26-27 (S.D.N.Y. 1997) (same); *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 557 (S.D.N.Y. 1994) (same); *Namoury v. Tibbetts*, 2007 U.S. Dist. LEXIS 13235, at *5 (D. Conn. Feb. 26, 2007) (same).  This is appropriate irrespective of whether counsel has made a motion to terminate or limit the deposition under Rule 30(d)(3). In fact, "Rule 37(a)(2)(B) specifically contemplates a motion to compel when a deponent refuses to answer a question," and "the witness [may] decline to answer and then wait to defend such a motion."  *Riddell Sports*, 158 F.R.D. at 558; *see also Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, 2009 U.S. Dist. LEXIS 104020, at *33 (E.D.N.Y. Nov. 9, 2009) (attorney may direct a witness not to answer questions that fall within the scope of Rule 30(d)(3)(A)'s prohibition even without making a motion for a protective order).

---

[7]    Judge Shira A. Scheindlin has developed and published Suggested Rules of Discovery Practice that provide further guidance on appropriate instructions not to answer at depositions.  In particular, Judge Scheindlin's Suggested Rules of Discovery Practice provide that "Directions to a witness not to answer questions should be limited to four instances: (1) The question seeks privileged information; (2) the question is posed for the purpose of harassment; (3) the question is clearly irrelevant and there is the likelihood of substantial prejudice to the witness or a party; or (4) the question seeks confidential business information or trade secrets."  *See* Hon. Shira A. Scheindlin Suggested Rules of Discovery Practice, Rule A.4., *available at* http://nysd.uscourts.gov/judge/Scheindlin.

The operation of Rule 30(d)(3) is evident in *Palm Bay*.  There, counsel directed a non-party witness not to answer questions about a traffic accident with which she was involved.  *See Palm Bay Int'l*, 2009 U.S. Dist. LEXIS 104020, at *31.  No party made a motion to terminate or limit the deposition under Rule 30(d)(3).  *Id.* at *33.  Nonetheless, the court held that "counsel was within her right to direct the witness not to answer these questions" because they fell within the scope of Rule 30(d)(3)(A)'s prohibition.  *Id.*  In reaching this conclusion, the court noted the examiner's "questions do not address any claim or defense in the case, the witness is not a party, no evidence of any 'conviction' has been presented to support a good faith basis for asking such questions, and the questions are not designed to lead to admissible evidence in light of the nature of the underlying incident involving a traffic accident."  *Id.*  For these reasons, the court determined that "this line of questioning borders on harassment of the witness."  *Id.*

Here, the two subjects of inquiry that resulted in instructions not to answer are both plainly irrelevant to this case and designed to harass the witness.  *First*, Mr. Willard asked Mr. Kassan:  "What was [WHX's] potential investment strategy to possibly increase the WHX [pension] plans exposure to mortgages" in February, 2009.  (*See* Kassan Tr. at 163:11-13.)  Of course, Plaintiffs' case has absolutely nothing to do with WHX's actual or potential exposure to mortgages.  WHX's investment strategy in February, 2009 – months after SWI's assets had been spun off – is also confidential.  Mr. Kaplan therefore instructed the witness not to answer, and asked Mr. Willard to explain the relevance of this inquiry on the record.  (*See id.* at 163:17-23, emphasis added.)  In response, Mr. Willard indicated that "Mr. LaBow testified that he was suggesting the same strategy for Severstal as he was for WHX," and Mr. Willard was "***curious*** as to what [was] WHX's understanding of that strategy."  (*Id.* at 164:10-17, emphasis added.)  Mr. Kaplan advised this was "outside the scope of discovery," and that "[s]trategies in the WHX

Pension Plan, after the date of the transfer, have nothing to do with this case and it's really not any of Severstal's business."[8]  (*Id.* at 164:8-25.)  Mr. Kaplan then suggested that Plaintiffs raise this issue with the Court if they wished to pursue the matter.  (*Id.* at 165:10-12.)  Plaintiffs chose not to do so (except by virtue of this sanctions motion).

*Second*, Mr. Willard questioned Mr. Kassan about a report from AON Investment Consulting in March, 2008 – almost nine (9) months before the transfer of assets at issue – that identified AON's view of WPN's fees.  (*Id.* at 206:7-207:10.)  Again, Mr. Kaplan asked Plaintiffs to state the relevance of this inquiry.  (*Id.* at 209:3-10.)  In response, Mr. Willard refused to do so, and instead asked:  "[D]id it cause you any concern, as a fiduciary, as the Chair of the [WHX] Pension Investment Committee that AON conducted an independent study and found that your investment pension manager is operating in a manner consistent with a hedge fund?"  (*Id.* at 209:12-17.)

Mr. Kaplan instructed Mr. Kassan not to answer this question on the grounds that it was an obvious attempt to "dig up stuff to try to restate [Plaintiffs'] claims that have been dismissed . . . ."  (*Id.* at 210:3-9.)  Mr. Kaplan further noted that "the fundamental assumption [of the question was] wrong," since "the New York City Pension Fund has people who invest in hedge funds, too."  (*Id.* at 209:22-210:2.)  Despite this, Mr. Kaplan informed Mr. Willard that he would reconsider his instruction not to answer if Mr. Willard could articulate some connection to this case.  (*Id.* at 210:9-13.)  Mr. Willard could not do so.[9]

---

[8]     Mr. LaBow's attorney agreed, stating his view that "Severstal never implemented any of those strategies so, you know, I don't know what the claim would be here."  (*Id.* at 165:2-6.)

[9]     Mr. Willard did state that this question is relevant because SWI's pension plan assets at one point in time resided in the WHX Pension Plan Trust.  (*Id.* at 211:3-6.)  But Plaintiffs nowhere claim SWI's pension plan assets were improperly managed while they resided in the WHX Pension Plan Trust.  In fact, as noted by Mr. LaBow's counsel, "[Plaintiffs'] own witnesses have produced documents showing that the returns on [Plaintiffs'] funds up until [the date of transfer] were stellar."  (*Id.* at 211:15-19.)  For this reason, Mr. Kaplan did not withdraw his instruction, as he concluded that Mr. Willard's purported rationale for this question "ma[de] it clear [he was] fishing around to try to get some information for a claim against WHX."  (*Id.* at 212:8-12.)

After a break necessitated by his improper questions,[10] Mr. Willard continued pressing this issue.  In particular, Mr. Willard asked:  "After receiving [AON's] report, did the WHX Pension Investment Committee seek to have Mr. LaBow make any changes in his investment strategy or process?"  (*Id.* at 216:2-5.)  Mr. Kaplan again instructed Mr. Kassan not to answer on the grounds that Mr. Willard was "really harassing the witness," "trying to sue him personally," and "digging into [Mr. Kassan's] fiduciary duties."  (*Id.* at 216:8-217:15.)  Remarkably, Mr. Willard responded by denying this, stating Plaintiffs were "not trying to sue [Mr. Kassan] personally" (*id.* at 217:16-17), even though Mr. Kassan is individually named as a defendant in Plaintiffs' proposed TAC.  Mr. Kaplan again suggested that Plaintiffs raise this issue with the Court if they wished to pursue this question.  (*Id.* at 217:8-10.)  Plaintiffs again chose not to do so (except by virtue of this sanctions motion).

In sum, we respectfully submit that Mr. Kaplan's instructions not to answer were necessary and appropriate.  *See, e.g., Palm Bay Int'l*, 2009 U.S. Dist. LEXIS 104020, at *33 (counsel properly directed witness not to answer questions at deposition because they were irrelevant, there was no good faith basis for asking them, and they bordered on harassing the witness); *In re Stratosphere Corp. Secs. Litig.*, 182 F.R.D. at 620-21 (the pervasive or other nature of irrelevant questions may evidence bad faith, or intent to embarrass, annoy, or oppress the deponent); *Saylavee LLC v. Hockler*, 2005 U.S. Dist. LEXIS 39802, at *7 (D. Conn. June 14, 2005) (finding that "the burden of answering certain questions [at deposition] outweighs their likely value," and "justice requires that [the witness] be excused from answering these questions to protect her from annoyance, embarrassment, oppression, or undue burden") (citation and quotation marks omitted).  Most tellingly, Plaintiffs do not move to compel answers to the

---

[10]    Mr. Willard's questions began to frustrate Mr. Kassan, and Mr. Kaplan requested a break to calm the witness down.  (*Id.* at 214:9-14.)

questions at issue.  *See Birdine*, 225 F.R.D. at 158-59 (explaining proper remedy when defending counsel refuses to withdraw an objection is to "begin another line of questioning and file a motion to compel as soon as possible after the deposition has ended").  Nor do they argue in their motion papers that they were deprived of relevant information as a result of Mr. Kaplan's instructions.  This is because there is no basis for any such argument.

## IV. PLAINTIFFS FAIL TO ESTABLISH THAT MR. KAPLAN'S CONDUCT WARRANTS SANCTIONS UNDER 28 U.S.C § 1927 OR THE COURT'S INHERENT POWER

Sanctions may be imposed under 28 U.S.C. § 1927 or the Court's inherent power only if there is a particularized showing of bad faith.  (*See supra* 6.)  This may exist where an attorney "***essentially destroys*** a deposition through excessive groundless objections or lengthy personal attacks on his or her adversary."  *Phillips*, 1994 U.S. Dist. LEXIS 3748, at *4 (emphasis added). In determining whether an attorney acted in bad faith, courts in the Second Circuit typically consider three factors: "(1) the *extent and pervasiveness* of the interruptions, as evidenced by the number of times that the attorney appears on the transcript; (2) the *character* of the interruptions (*e.g.*, whether they included personal attacks on opposing counsel, or were merely groundless objections); and (3) the *effect* of the attorney's conduct (*e.g.*, whether the deposition was entirely destroyed or merely prolonged)."  *See Sicurelli v. Jeneric/Pentron, Inc.*, 2005 U.S. Dist. LEXIS 38943, at *9 (E.D.N.Y. Dec. 30, 2005) (emphasis in original).

In *Unique Concepts, Inc. v. Brown*, 115 F.R.D. 292 (S.D.N.Y. 1987), for example, the court awarded sanctions where opposing counsel's interruptions appeared on 91% of the pages of the transcript and included calling the examiner an "obnoxious little twit" and "boasting about his performance in other non-related litigation during a lengthy, irrelevant, self-serving diatribe." *Id.* at 293.  The court determined this misconduct "destroyed" the deposition by rendering it "hopelessly flawed by improprieties" designed to harass the deponent and delay the examination.

16

*Id.* at 294; *see also Morales*, 204 F.R.D. at 54 (awarding sanctions where opposing counsel's interruptions appeared on 85% of the pages of the transcript with statements other than objections to form or requests that the court reporter read back the question and included private consultations with the witness, instructions not to and how to answer, and *ad hominem* attacks that were disruptive and protracted the length of the deposition); *Brignoli v. Balch, Hardy & Scheinman, Inc.*, 126 F.R.D. 462, 466 (S.D.N.Y. 1989) (awarding sanctions where opposing counsel's interference included improper objections, directions not to answer proper questions, interjecting substantive testimony in the client's stead, and speaking objections even after the court expressly prohibited them, and was so pervasive that it caused the deposition to drag on for more than eight fully days); *SS&J Morris, Inc. v. I. Appel Corp.*, 2000 U.S. Dist. LEXIS 10381, at *15 (S.D.N.Y. July 26, 2000) (imposing sanctions where opposing counsel's interference included offensive statements, such as "Bend over.  I will pin a medal on you for your noble efforts," and was so pervasive that it caused the deposition to continue for five days).  By contrast, in *Phillips*, the court declined to impose sanctions where opposing counsel's interruptions appeared on 60% of the pages of the transcript.  *See Phillips*, 1994 U.S. Dist. LEXIS 3748, at *8.  The court found that although opposing counsel's conduct was "inappropriate and at times even obnoxious," it was not so egregious as to evince bad faith because it "[was] not so outrageous as to destroy the deposition, nor was the character of her interjections so blatantly vituperative as to indicate that she was acting in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id.* at *10-11 (citations and quotation marks omitted).

Here, Plaintiffs argue that Mr. Kaplan's name appears on approximately 48% of the transcript (103 pages of 215) with statements other than objections to form.  (*See* Pls. Mem. at 6.) *First*, this figure is exaggerated, since the vast majority of this time was spent responding to (i)

17

Plaintiffs' incomplete exhibits; (ii) colloquy initiated by Mr. Willard concerning WHX's

purportedly incomplete document production; (iii) Mr. Willard's mischaracterization of prior

testimony and repetitive questions; (iv) issues of privilege; and (v) obvious efforts to obtain

evidence in aid of previously dismissed and newly proposed claims against the WHX Parties.

*See* Exhibit C hereto (describing the nature of Mr. Kaplan's purported "interruptions" during the

deposition).  *Second*, and even if Plaintiffs' 48% figure is to be credited, this does not rise to the

extent and pervasiveness of interruptions required for sanctions.  *Cf. Unique Concepts*, 115

F.R.D. at 293 (awarding sanctions where opposing counsel's interruptions appeared on 91% of

the pages of the transcript with statements other than objections to form) and *Morales*, 204 F.R.D.

at 54 (awarding sanctions where opposing counsel's interruptions appeared on 85% of the pages

of the transcript with statements other than objections as to form or requests that the court

reporter read back the question) *with Sicurelli*, 2005 U.S. Dist. LEXIS 38943, at *4 (declining to

impose sanctions under Section 1927 or inherent power where counsel's name appeared on

approximately 76% of the pages of one transcript and 67% of another with statements other than

objections to form or requests for the court reporter read back a question); *Phillips*, 1994 U.S.

Dist. LEXIS 3748, at *8 (declining to impose sanctions where counsel's name appeared on 60%

of the pages of the transcript).

      In fact, despite Mr. Willard's argumentative and improper behavior throughout the

deposition, Mr. Kaplan ***never made a single personal attack against him***.  Instead, Mr. Kaplan's

participation consisted predominantly of objections to form and clarifications of the questions

and the record.  *See* Exhibit C.  He further kept his non-form objections to a minimum, instructed

the witness not to answer only three (3) particularly egregious questions, and conferred with the

witness only one (1) time during the deposition (at the request of the witness).  This conduct is

simply not "so outrageous as to destroy the deposition, nor was the character of his interjections

so blatantly vituperative as to indicate that he was acting in bad faith, vexatiously, wantonly, or

for oppressive reasons." *See Am. Fun & Toy Creators*, 1997 U.S. Dist. LEXIS 12419, at *32

(declining to impose sanctions under Section 1927 or inherent power where opposing counsel's

interruptions, which included conferring with the witness on two occasions while questions were

pending and walking out of the room on one occasion, did not rise to the level of bad faith

because the conduct was "not so outrageous as to destroy the deposition" or "so blatantly

vituperative"); *Sicurelli*, 2005 U.S. Dist. LEXIS 38943, at *21 (declining to impose sanctions

under Section 1927 or inherent power where counsel's comments were "sarcastic, unprofessional

and insulting," and his conduct in walking out of the room in the middle of the deposition "was

improper, thwarted the progress of the deposition and added to the tension between counsel," but

"did not completely destroy the deposition").

## V.  PLAINTIFFS FAIL TO ESTABLISH MR. KAPLAN'S
## CONDUCT WARRANTS SANCTIONS UNDER RULE 30(D)(2)

Finally, Mr. Kaplan's conduct does not warrant sanctions under Rule 30(d)(2).  Sanctions

may be awarded under Rule 30(d)(2) for conduct that the Court determines has "frustrated the

fair examination of the deponent, " such that examining counsel is prevented from completing

the deposition or the deposition is ultimately rendered "worthless."  (*See supra* at 6-7.)

In support of their request, Plaintiffs cite only two cases in which sanctions under Rule

30(d)(2) were awarded.  (*See* Pls. Mem. at 5, 17.)  In *Morales*, the court had previously warned

counsel that objections should be stated simply, and that directions not to answer should be

limited to privilege.  *See Morales*, 204 F.R.D. at 54.  Despite this, opposing counsel's

interruptions appeared on 85% of the pages of the transcript with statements other than

objections to form or requests that the court reporter read back an inquiry and included

"instructions [on] how to answer, colloquies, interruptions, and *ad hominem* attacks" that were disruptive and protracted the length of the deposition.  *Id.*  Opposing counsel further prevented examining counsel from contacting the court to resolve the dispute.  *Id.* at 52.  Significantly, the court noted that it "does not encourage sanctions motions and [was] hesitant to impose sanctions . . . ."  *Id.* at 53.  Similarly, in *Sicurelli*, opposing counsel's interruptions appeared on approximately 76% of the pages of one transcript and 67% of another with statements other than objections to form or requests that the court reporter read back the question and included at least 29 instructions not to answer, unprofessional conduct, sarcastic and taunting comments to the examiner, an unprovoked personal attack of the examiner's legal experience, and walking out of the room with the deponent in the middle of the deposition.  *See Sicurelli*, 2005 U.S. Dist. LEXIS 38943, at *12, 24.  The court further noted that the examiner "maintained a restrained and professional demeanor, and did nothing to provoke plaintiffs' counsel's conduct, or harass and threaten the plaintiffs."  *Id.* at 26.  Because opposing counsel's conduct "impeded the fair examination of [the deponents]," the court imposed sanctions under Rule 30(d)(2).  *Id.* at 27.

The present case is nothing like these situations.  As discussed above, Mr. Willard engaged in argumentative and improper behavior throughout Mr. Kassan's deposition, often pressing questions that far exceed the bounds of permissible discovery.  *See* Exhibits A & B.  Despite this, Mr. Kaplan kept his non-form objections to a minimum, instructed the witness not to answer only three (3) particularly egregious questions, and conferred with the witness only one (1) time during the deposition (at the request of the witness).  Plaintiffs have not even attempted to argue that any of their unanswered questions fell within the scope of discovery permitted by the Federal Rules of Civil Procedure.  Nor have they filed a motion to compel this testimony.  There is no dispute that Plaintiffs were not prevented from completing the deposition.

Nor was the deposition rendered worthless.  Sanctions are inappropriate.  *See, e.g., Phillips*, 1994 U.S. Dist. LEXIS 3748, at *11 (declining to impose sanctions under Rule 30(d)(2) because the examiner "was not prevented from completing the deposition," even though opposing counsel's objections were "rarely concise and frequently argumentative," and that "[t]he sheer volume of unwarranted objections . . . interfered substantially with [the examiner's] ability to obtain information"); *Synventive Molding Solutions*, 262 F.R.D. at 375 (declining to impose sanctions under Rule 30(d)(2) since the deposition was not "ultimately rendered worthless," even though opposing counsel's conduct included constantly asserting baseless objections, coaching the witness, testifying on the record, asking the court reporter to read back questions on an "inordinate number of occasions," and other conduct "targeted to frustrate [the examiner's] attempt to depose a critical witness"); *Okoumou*, 2004 U.S. Dist. LEXIS 19120, at *5 (declining to impose sanctions under Rule 30(d)(2) since opposing counsel's non-form objections, though undesirable, did not prevent the examiner from making a complete inquiry).

## **CONCLUSION**

For the reasons set forth above, Howard J. Kaplan, Esq. and Arkin Kaplan Rice LLP

respectfully requests that the Court (i) deny Plaintiff's motion for sanctions; and (ii) award them

reasonable expenses and attorneys' fees incurred opposing this frivolous motion.

Dated: New York, New York
      April 11, 2012                       Respectfully submitted,

                                     ARKIN KAPLAN RICE LLP

                                     By: *<u>/s/ Howard J. Kaplan</u>*
                                        Howard J. Kaplan, Esq.
                                        Lisa C. Solbakken, Esq.
                                        Deana Davidian, Esq.
                                        590 Madison Avenue, 35th Floor
                                        New York, New York  10022
                                        Tel:  (212) 333-0200
                                        Fax:  (212) 333-2350

                                        *Attorneys for Handy & Harman, Ltd.,*
                                        *the Handy & Harman, Ltd. Pension*
                                        *Investment Committee, Glen Kassan and*
                                        *James McCabe*