USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: AUG 17 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SEVERSTAL WHEELING, INC. et al.,

        Plaintiffs,

-v-                                  No. 10 Civ. 954 (LTS)(GWG)

WPN CORPORATION et al.,

        Defendants

-------------------------------------------------------x

## MEMORANDUM ORDER

Plaintiffs Severstal Wheeling, Inc. Retirement Committee, ("SRC"), Timothy S. Rogers, Melvin Baggett, William Drew Landon, and Severstal Wheeling, Inc. ("Severstal") (collectively "Plaintiffs") bring this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et. seq., against Defendants WPN Corporation ("WPN") and its principle and sole executive officer, Ronald LaBow ("LaBow"), (collectively, "Defendants"), for breach of fiduciary duty, breach of contract, and professional negligence arising from Defendants' alleged failure to diversify trust assets. Plaintiffs also asserted claims against WHX Corporation, which were dismissed in September 2011. (Docket entry no. 72.)

Defendants now move for summary judgment. The Court has jurisdiction of Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1367. The Court has considered carefully all of the parties' extensive submissions in connection with the motion. For the following reasons, Defendants' motion is denied.

## BACKGROUND

The following facts are undisputed unless otherwise noted. Plaintiffs are fiduciaries of the Severstal Wheeling, Inc. Pension Trust (the "Trust") and the two ERISA

employee benefit plans (collectively, the "Plans") funded by the Trust. (Defs' 56.1 St. ¶ 1.) The Plans were originally funded through and made up approximately 10% of the WHX Pension Plan Trust. (Id. ¶ 3.) In February 2004, WPN entered into an Investment Consulting Agreement (the "WHX Investment Agreement") with WHX Corporation on behalf of the WHX Pension Trust, which vested WPN with "complete, unlimited and unrestricted management authority with respect to" assets in the WHX Pension Trust. (WHX Investment Agreement, First Amendment, attached to Second Amended Complaint ("SAC") as Exhibit D.) In 2008, WHX, WPN, and LaBow executed the Second Amendment to the WHX Investment Agreement, which required, among other things, that LaBow and WPN obtain and maintain "a fiduciary liability insurance policy or policies for the benefit of the client." (Labow Dep. Ex 4 ¶ 19.)

In June of 2008, Citibank N.A. ("Citibank"), which had been the trustee and custodian for the WHX Pension Trust, announced its intention to exit the ERISA trust business. Because no other trustee would hold the Severstal Plan assets in an intermingled trust with WHX's Plan assets, the decision was made to remove the Severstal Plans' assets from the WHX Pension Trust and to transfer the assets to a new and separate trust. (Defs' 56.1 St. ¶¶ 9-10; Halpin Dep. Ex. 38.) Prior to November 3, 2008, the WHX Pension Trust had approximately $395 million invested with several investment advisors, including approximately $31 million in stock in an account managed by Neuberger Berman, L.L.C. ("N&B"). (Defs' 56.1 St. ¶ 13). On November 3, 2008, all assets in the N&B account (which was comprised almost exclusively of large-cap energy stocks) were transferred from the WHX Pension Trust to the newly established Severstal Wheeling, Inc. Pension Plan Trust. (Id. ¶ 11; Pls' 56.1 St. ¶¶ 11, 14.)

According to Defendants, WPN and LaBow played no role in the decisions to separate the Severstal assets from the WHX Pension Trust. (Defs' 56.1 St. ¶ 13.) Plaintiffs

contend, however, that LaBow and WPN decided what assets to transfer from the WHX Pension Trust and instructed Citibank to complete the transfer. (Pls' 56.1 St. ¶ 13.) The record reveals that, on September 15, 2008, WHX Corporation Treasurer David Riposo ("Riposo") told LaBow that Michael DiClemente ("DiClemente"), a member of the Severstal Retirement Committee, had advised Riposo that Severstal wanted its plan assets to be transferred "in cash." (LaBow Dep. Ex. 22.) When Riposo passed this instruction to LaBow, LaBow replied "[Severstal] may not get cash. We shall see." (LaBow Dep. Ex. 23.) On September 30, 2008, DiClemente made a request to Glen Kassan, the chairman of WHX Corporation's Pension Investment Committee, that the plan assets be transferred to the Severstal Trust "in the same percentage investment allocations as existed in the WHX Pension Trust." (DiClemente Dep. Ex. 3.) On October 3, 2008, Riposo sent LaBow an e-mail in which he asked: "have you identified the assets to move to [Severstal]? Anything WHX needs to sign?" (LaBow Dep. Ex. 31.) LaBow replied that he was "working on it." (LaBow Dep. Ex. 32.) In a letter to DiClement, dated October 22, 2008, LaBow acknowledged DiClemente's September 30 transfer request, and stated "I intend to direct the transfer of most of the assets." (LaBow Dep. Ex. 14.) On October 31, 2008, LaBow sent an email to Riposo: "pls transfer the entire [N&B account] to Severstal Wheeling prior to market opening on Nov 3, 2008." (LaBow Dep. Ex. 37.)

    The transfer was accomplished by Citibank on the evening of November 3, 2008. There is no evidence that any individual from Severstal gave authorization to Citibank prior to the transfer. The following day, DiClemente sent a letter to Citibank directing that the N&B account be transferred "as part of transferring the assets of [the Severstal Plans]." (DiClemente Dep. Ex. 4.) DiClemente testified that, at the time the letter was sent, it was DiClemente's understanding that the Severstal Trust would also receive a percentage of the other assets in the

WHX Master Trust. (DiClemente Dep. at 99, 106, 722.) In fact, the transferred Severstal Plan assets consisted solely of the assets held in the N&B account. (Declaration of Andrew T. Quesnelle ("Quesnelle Decl.") Ex. A.)

The parties also dispute when LaBow and WPN acquired legal authority to manage the assets in the newly formed Severstal Trust. Defendants assert that Severstal did not contract to retain Labow and WPN's investment management services until Severstal and Defendants signed the Third Amendment to the WHX Investment Consulting Agreement on December 5, 2008. The Third Amendment, which incorporated the First and Second Amendments to that WHX Agreement, provided LaBow and WPN with "complete, unrestricted, and unlimited management authority" with respect to the Severstal Trust assets. (Defs' 56.1 St. ¶ 27; Pls' 56.1 St. ¶ 27 (quoting Third Amendment, attached as Exs. D, E to SAC).) It further provided that Severstal would "advise the . . . custodian of the [Severstal Trust] Investment Fund of [Severstal's] retention of [WPN] as provided herein and shall instruct and direct the trustee or custodian to comply with and honor requests and instructions of [WPN]." (Defs' 56.1 St. ¶ 31.)[1]

It is undisputed that the Third Amendment was signed on December 5, 2008; however, Plaintiffs argue that it went into effect on November 1, 2008. LaBow admits in his deposition that he handwrote "November 1, 2008" as the effective date on the Third Amendment document, and Plaintiffs produce a letter LaBow sent on January 12, 2009, to Severstal claiming to be entitled to fees for his services in November and December 2008. (Pls' 56.1 St. ¶ 27.)

---

[1] Citibank was the Trust custodian from November 3, 2008; it was replaced by National City Bank ("NatCity") on January 6, 2009. (Defs' 56.1 St. ¶ 37.)

Defendants assert that, even after the Third Amendment was signed, Plaintiffs failed to notify the Trust's custodians of WPN and LaBow's appointment, thereby depriving Defendants of their authority to manage the Trust assets. (Defs' 56.1 St. ¶¶ 31-35.) During this period, Defendants contend, DiClemente and SWI Retirement Committee member Dennis Halpin ("Halpin") were the only persons authorized to issue investment instructions (id. ¶¶ 34, 38), and Severstal did not empower Defendants to manage the Trust account until March 20, 2009. (Id. ¶¶ 66-67.) In support of this claim, Defendants cite testimony by DiClemente and Halpin that they could "not recall" or "had no idea" whether anyone at Severstal notified Citibank or NatCity of Defendants' retention. (Id. ¶¶ 33, 35, 40.)[2]

According to Plaintiffs, DiClemente first discovered that the Severstal assets were invested entirely in the N&B account on December 29, 2008. (DiClemente Dep. Ex. 21.) When DiClemente addressed his concern to LaBow, LaBow responded that he could retroactively reallocate the assets in such a way that the Severstal Trust would receive a portion of all assets in the WHX Master Trust retroactive to November 3, 2008. (Halpin Dep. Ex. 16.) On January 7, 2009, however, LaBow informed DiClemente, Halpin and Severstal's outside counsel, Sally King, that such a reallocation was not possible because some funds in the WHX Master Trust had minimum investment requirements that the Severstal Trust could not meet. (Halpin Dep.

---

[2] Amanda Pierce, a representative of NatCity, also testified that she did not remember whether any NatCity employee told her that LaBow had authority to direct investment of the Severstal Trust assets. (Deposition of Amanda Pierce ("Pierce Dep.") at 66.) However, when asked, "Did you have an understanding when you were involved in opening up the Severstal Wheeling pension trust as to who had authority to direct investment of that trust?" Ms. Pierce replied, "Based on the documentation and what we were told, it was Ron LaBow. (Id. At 53.) Pierce later agreed that the Third Amendment was e-mailed to her on December 16, 2008, before the assets were transferred from Citibank to NatCity. (Pierce Dep. 20, 25; Pierce Dep. Ex. 4.) When shown the Third Amendment by Plaintiffs' counsel, Pierce agreed that it was the document that gave her the understanding "that Ronald LaBow would be the investment manager to the Severstal Wheeling trust." (Pierce Dep. at 25.)

Ex. 16.) In their deposition testimony, Severstal personnel characterize LaBow's explanations regarding his inability to retroactively reallocate the assets as evasive and inconsistent. (See, e.g., Halpin Dep. at 61-63.) In a February 2009 letter explaining his inability to reallocate, LaBow stated: "I felt I had no other option given market conditions and the previous decline in energy shares to transfer the entire Neuberger Berman Account." (DiClemente Dep. Ex. 39.) Throughout February 2009, LaBow sent numerous letters to Severstal personnel "recommending" that they diversify and/or liquidate the assets in the Trust. (Defs' 56.1 St. ¶¶ 43-46.)

On March 24, 2009, the stocks in the N&B portfolio were liquidated, and the Trust was entirely invested in cash. (Defs' 56.1 St. ¶ 73.) By that date, the Seversal Trust's holdings in the N&B account had lost approximately 19% of their pre-transfer value. (SAC ¶ 79.) In one internal memo, Halpin stated that the WHX Pension Trust, which was diversified, "has well outperformed" the Severstal Trust (Pls' 56.1 St. ¶ 42); in another, DiClemente noted that the "the largest loss [in the Plan's value] was due to the concentrated energy exposure of Neuberger Berman." (Id. ¶ 55).

Plaintiffs commenced this lawsuit on February 5, 2010.[3] After two complaint amendments and a round of dispositive motion practice, the following claims survive against Defendants: (1) breach of the duty to diversify the assets of the Severstal Trust, in violation of ERISA sections 502(a) and 409 (Count II); (2) breach of the duty to loyally manage plan assets in violation of ERISA sections 404(a)(1)(A) and 406(b) by "investing the entirety of the Severstal Trust in the [N&B Account because] of . . . LaBow's relationship and dealings with

---

[3]   A fuller procedural history is laid out in Severstal Wheeling Inc. v. WPN Corp., 809 F. Supp. 2d 245 (S.D.N.Y. 2011).

[NB]," and "giving preferential treatment to the WHX Pension Trust over the Severstal Trust." (Count I); (3) breach of contract for failing to maintain a fiduciary insurance policy, as required by the Third Amendment (Count V); and (4) professional malpractice for failing to diversify the assets in the Trust (Count VI). Defendants move for summary judgment as to each Count.

## DISCUSSION

A motion for summary judgment shall be granted in favor of a moving party where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (the moving party bears the burden of establishing that there is no genuine issue of material fact). In the summary judgment context, a fact is material "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248). In assessing the record to determine whether there is a genuine dispute of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. Anderson, 477 U.S. at 255. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration in original)).

I.   Breach of Fiduciary Duty to Diversify

Plaintiffs allege that Defendants breached their fiduciary duty by permitting the Plan assets to be invested exclusively in the N&B account on November 3, 2008, and by failing

to diversify the Trust thereafter. Defendants contend they are entitled to summary judgment because they were not empowered to act as fiduciaries of the Trust until March 2009.

To prevail on an ERISA claim for breach of fiduciary duty, plaintiffs must show that "(1) defendants were fiduciaries of the plan who, (2) acting within their capacities as plan fiduciaries, (3) engaged in conduct constituting a breach of an ERISA fiduciary duty." In re Pfizer Inc. ERISA Litig., No. 04 Civ. 10071(LTS), 2009 WL 749545, at *6 (S.D.N.Y. Mar. 20, 2009) (citing 29 U.S.C. § 1109). ERISA section 404(a)(1)(C) requires fiduciaries to "diversify[ ] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C.A. § 1104(a)(1)(C) (West 2011). "The fiduciary standard imposed by ERISA requires the application of a reasonableness standard. Rarely will such a determination be appropriate on a motion for summary judgment." Bd. of Trs. of the S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp., 2011 U.S. Dist. LEXIS 142367, at *14 (S.D.N.Y. Dec. 9, 2011) (citing Hunt v. Magnell, 758 F. Supp. 1292, 1297 n.6 (D. Minn. 1991)).

Section 3(21)(A) of ERISA provides, in relevant part, that a "person is a fiduciary with respect to a plan," and therefore subject to ERISA fiduciary duties, "to the extent" that:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C.A. § 1002(21)(A) (West 2011). As the Second Circuit has emphasized, "Congress intended ERISA's definition of fiduciary 'to be broadly construed.'" LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997) (quoting Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir.

1987)). "The definition of 'fiduciary' under ERISA focuses on the exercise, as well as the possession, of authority or control." Blatt v. Marshall & Lassman, 812 F.2d 810, 813 (2d Cir. 1987). Thus, an individual may be deemed a fiduciary under subsection (i) if she "exercise[s] discretionary authority, regardless of whether such authority was ever granted"; conversely, she may be deemed a fiduciary under subsection (iii) if she has "actually been granted discretionary authority, regardless of whether such authority is ever exercised." Bouboulis v. Transport Workers Union of America, 442 F.3d 55 (2d Cir. 2006) (quotation marks omitted); see also LoPresti, 126 F.3d at 40 ("Unlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional.") (quoting Mason Tenders Dist. Council Pension Fund v. Messera, 958 F. Supp. 869, 881 (S.D.N.Y. 1997).

Defendants argue that they cannot be held liable for the November 3 transfer because they were not legally authorized to manage the Trust until the Third Amendment was signed in December 2008. They further argue that they cannot be held liable for failing to diversify the Trust assets, even after they signed the Third Amendment, because Plaintiffs failed to instruct the Trust's custodians that Defendants were authorized to direct investment decisions. Neither assertion is availing.

Plaintiffs have presented ample evidence from which a reasonable jury could conclude that Defendants were fiduciaries of the Trust as of the November 3 transfer. LaBow admits in his deposition that he wrote "November 1, 2008" as the effective date for the Third Amendment, which granted Defendants "complete, unlimited, and unrestricted management authority" over the Severstal assets. (Pls.' Resp. 56.1 St. ¶ 21.) Plaintiffs' assertion that LaBow was a fiduciary at the time of the transfer is further buttressed by LaBow's January 12, 2009, letter to Severstal in which he asserted that he was "entitled to fees" for services in November

2008. (Id. ¶ 26; LaBow Dep. Ex. 39). Plaintiffs have also presented numerous pieces of evidence in support of their claim that Defendants actually exercised their investment authority by directing the transfer. Such evidence includes (but is by no means limited to): (1) the October 22, 2008, letter from LaBow informing DiClemente that he (LaBow) "intend[ed] to direct the transfer of most of the assets of the [Severstal] Trust" on November 3, 2008 (LaBow Dep. Ex. 14); (2) the October 31, 2008, letter from LaBow to the Treasurer of WHX directing him to "transfer the entire [N&B account] to Severstal Wheeling prior to market opening" on November 3, 2008 (Pls' Resp. 56.1 St. ¶ 17; LaBow Dep. Ex 37); and (3) exhibits showing that Citibank did not wait for written approval from Severstal before transferring the assets.

The record also belies Defendants' contention that Plaintiffs' refusal to notify the custodians deprived Defendants of their authority to manage the Trust. The only evidence Defendants adduce in support of this claim is deposition testimony in which DiClemente and Halpin replied that they "did not know" or "could not recall" whether someone from Severstal notified the custodians of Defendants' retention. (Defs' 56.1 St. ¶ 33-40.) Plaintiffs' exhibits, however, indicate that Citibank executed the November 3 transfer without prior approval with Severstal, which suggests that Citibank was aware of LaBow's authority. Testimony by NatCity employee Amanda Pierce indicates that NatCity was aware of the terms of the Third Amendment. In any event, there is no indication in the record that Plaintiffs' formal notification of the custodians was a condition precedent to Defendants' receipt and exercise of "complete, unlimited and unrestricted management authority" under the Third Amendment. Nor is there any evidence that Defendants raised concerns that their directives were not being heeded by the Trust's custodians. Thus, even if Defendants established that Plaintiffs failed to fulfill their notification commitment, a reasonable jury could still find that Defendants violated their

fiduciary duty by failing to be sufficiently proactive in protecting their authority to manage the undiversified Plan assets.

Accordingly, the Court finds that there is a genuine dispute as to material facts precluding summary judgment as to whether Defendants breached their fiduciary duty by directing the November 3 transfer, which resulted in a Severstal Trust composed solely of N&B energy-related assets, and by failing to diversify the Plan assets thereafter. The motion for summary judgment as to Count II will therefore be denied.

II. <u>Breach of Fiduciary Duty of Loyalty</u>

Plaintiffs allege that WPN and LaBow breached their duty under ERISA section 404(a)(1)(A) to loyally manage the Plan's assets and ERISA section 406(b) by "investing the entirety of the Severstal Trust in the [N&B Account because] of . . . LaBow's relationship and dealings with [N&B]," and by "giving preferential treatment to the WHX Pension Trust over the Severstal Trust." (Id. ¶ 107.)

ERISA requires that fiduciaries discharge their duties "solely in the interest of the [ERISA plan] participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C.A. § 1104(a)(1)(A) (West 2011). In addition, they must do so "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C.A. § 1104(a)(1)(B) (West 2011). Section 406(b) prohibits a fiduciary from, <u>inter alia</u>, "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C.A. § 1106(b)(1) (West 2011).

Defendants argue that they are entitled to summary judgment because Plaintiffs have failed to adduce any evidence of improper influence. LaBow states in his affidavit that he had no interest – financial or otherwise – in either WHX or N&B, nor any reason to consider WHX or N&B's interests in connection with management of the Trust. (Defs' 56.1 St. ¶¶ 60-61.) However, Plaintiffs have presented evidence that LaBow had a 30-year, close relationship with the manager of the N&B account, Marvin Schwartz; that WHX's Chairman viewed the N&B account as a "toxic asset"; and that LaBow was guaranteed a fee in the amount of .9% of the WHX Pension Plan Trust, which was significantly larger than the Severstal Trust. (Pls' 56.1 St. ¶ 61.) Based on these facts, which Defendants do not dispute, a reasonable jury could find that LaBow had two incentives to transfer the N&B account to the Severstal Trust: bettering the performance of the larger WHX Pension Trust by removing a "toxic asset," and placating LaBow's 30-year friend by not dropping the N&B Account.[4]

### III.   Damages

Defendants move for summary judgment on the grounds that Plaintiffs have failed to established that the lack of diversification caused the investment losses. Section 409 of ERISA provides, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan <u>resulting from</u> each such breach." 29 U.S.C.A. § 1109(a) (West 2011) (emphasis added). "Because both loss to the fund,

---

[4] Defendants also argue that WHX had no interest in influencing subsequent investment decisions in the Trust once the separation and transfer was completed. However, Plaintiff has adduced evidence that LaBow could have retroactively reallocated the Severstal Trust assets, in effect returning some of the "toxic" N&B assets to the WHX Pension Trust, and that his stated reasons for failing to do so were suspect. (Pls' 56.1 St. ¶ 62.)

and a causal connection between that loss and defendant's breach, are necessary elements of an ERISA claim for damages under 29 U.S.C. § 1109(a), if [a defendant] demonstrates an absence of a genuine issue of material fact as to either causation or loss on [a plaintiff's] ERISA claims, [the defendant] is entitled to summary judgment on those claims." Bd. of Trustees of Aftra Ret. Fund v. JPMorgan Chase Bank, N.A., 806 F. Supp. 2d 662, 681-82 (S.D.N.Y. 2011) (quoting Salovaara v. Eckert, No. 94 Civ. 3430, 1998 WL 276186, at *4 (S.D.N.Y. May 23, 1998)).

Defendants argue that the Trust's losses are attributable to a market-wide decline, not to Defendants' alleged failure to diversity the assets. In support of this assertion, Defendants provide documentation that the S&P index lost more than a third of its value from November 4, 2008 to March 9, 2009, while the Severstal Trust lost only 13%. (Def's' 56.1 St. ¶ 41.) Defendants conclude from these documents that "the Trust's investment portfolio enjoyed much better investment returns than it would have had if it had been invested in a more diversified portfolio." (Id. ¶ 56.) Defendants offer nothing to substantiate their apparent assumption that a properly diversified fund would have performed on par with the S&P. Plaintiffs, meanwhile, produce evidence showing that the diversified WHX Pension plan preformed substantially better than the Severstal Trust and that the largest losses in the Plan value were attributable to the "concentrated energy exposure of N&B." Accordingly, the Court finds that Plaintiffs have provided evidence from which a reasonable jury could conclude that the losses resulted from Defendants' failure to diversify. Defendants motion for summary judgment for failure to show damages and causality is therefore denied.

IV.   State Claims (Counts V and VI)

Plaintiff Severstal alleges in Count V that Defendants breached their contractual

obligation under the Second Amendment to acquire a fiduciary liability insurance policy. Defendants move for summary judgment on the grounds that the failure to obtain an insurance policy did not cause injury to Plaintiffs. However, Plaintiffs correctly note that the purpose of a fiduciary liability insurance policy is to ensure that a meaningful remedy is available for breaches, and that Defendants failure to purchase such a policy means that Plaintiffs will be unable to collect the full amount of damages should Defendants prove judgment proof. Therefore, the motion for summary judgment as to Count V is denied.

Defendants also move for summary judgment on Plaintiff Severstal's professional negligence claim,[5] arguing that Defendants lacked authority to diversify the Trust assets and that the Plan's losses were the result of a market-wide collapse. These arguments fail for the reasons stated above. Accordingly, Defendants' motion for summary judgment as to Count VI claim is denied.

## CONCLUSION

For the foregoing reasons, Defendants motion for summary judgment is denied. A Final Pre-Trial Conference in this matter will be held on **January 25, 2013 at 2:00 p.m.** The parties must confer and make submissions in advance of the Final Pre-Trial Conference as required by the previously entered Pre-Trial Scheduling Order (docket entry no. 32). This Memorandum Order resolves docket entry no. 80.

SO ORDERED.

Dated: New York, New York
August 17, 2012

LAURA TAYLOR SWAIN
United States District Judge

---

[5] Severstal claims that it incurred additional funding liabilities to another of its employee benefit plans by reason of the losses in one of the plans funded by the Severstal Trust.