UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
SEVERSTAL WHEELING, INC. et al.,

       Plaintiffs,                   No. 10 Civ. 954 (LTS) (GWG)

  -against-                     **ECF Case**

WPN CORPORATION et al.,

       Defendants.
------------------------------------- X

**REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

                                                                                                                                <u>Page</u>

I.     DEFENDANTS WERE UNDISPUTEDLY FIDUCIARIES UNDER ERISA § 3(38) AS A RESULT OF THEIR AUTHORITY UNDER THE THIRD AMENDMENT .................................................................................................... 1

        A.     Plaintiffs' Motion Was Based In Part on Defendants' Having Authority Under the Third Amendment ................................................................ 1

        B.     Defendants' Excuses About Their Failure To Exercise Authority Do Not Suggest That They Did Not *Have* Authority ........................................... 2

                    1.     Defendants' "Real Argument" Is Based on a Factual & Legal Fallacy ................................................................................... 2

                    2.     Defendants' "Real Argument" Conflates Fiduciary Status With Breach ................................................................................... 3

                    3.     Defendant's Newly Minted "Real Argument" Based on State Contract Law Is Not a Defense to an ERISA Breach of Fiduciary Duty Claim ............................................................................... 7

II.    DEFENDANTS WERE FIDUCIARIES UNDER ERISA § 3(21)(A)**(ii)** ........................ 8

III.   THE COURT SHOULD MODIFY THE REPORT WITH RESPECT TO PLAINTIFFS' BREACH OF CONTRACT CLAIM ....................................................... 10

CONCLUSION ................................................................................................................ 10

Plaintiffs respectfully submit this Reply to Defendants' Response to Plaintiffs' Objections to the Magistrate Judge's Report and Recommendation.

## I. DEFENDANTS WERE UNDISPUTEDLY FIDUCIARIES UNDER ERISA § 3(38) AS A RESULT OF THEIR AUTHORITY UNDER THE THIRD AMENDMENT

Defendants do not dispute that they met the requirements of ERISA § 3(38) nor that meeting the requirements of ERISA § 3(38) means someone is a fiduciary. *Compare* Pls.' Obj. (ECF No. 208) at 3-4 *with* Def. Resp. (ECF No. 210) at 1-2. Defendants concede that the Third Amendment contained no condition precedent that needed to be satisfied before they *became fiduciaries*. Def. Resp. at 2. Instead of addressing whether they were fiduciaries, the bulk of Defendants' argument and evidence address whether they breached their duties – an issue not raised by Plaintiffs' motion.

### A. Plaintiffs' Motion Was Based In Part on Defendants' Having Authority Under the Third Amendment

Defendants assert that "Plaintiffs did not argue" in their original briefing that Defendants "were fiduciaries merely because they possessed investment authority." Def. Resp. at 1. This is simply wrong. Plaintiffs motion explained that Defendants were fiduciaries either because they actually exercised authority, or because they *had* investment authority. Pl. Mem. (ECF No. 189) at 8-9, 11-15, 22. On the latter, Plaintiffs' argument was and is based primarily on *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209 (2d Cir. 1987), which concluded that "it is simply beyond doubt" that defendants are fiduciaries when they have been given discretion and authority to manage, acquire and dispose of plan assets and were appointed investment managers under ERISA § 3(38) as Defendants were here pursuant to the Third Amendment. Pl. Mem. at 8-9; *see also* Pl. Reply (ECF No. 199) at 6; Pl. Obj. at 4-5. Indeed, Defendants do not dispute that is the law or that they had that power under the Third Amendment.

- 2 -

### B. Defendants' Excuses About Their Failure To Exercise Authority Do Not Suggest That They Did Not *Have* Authority

After conceding that the Third Amendment contains no condition precedent for their investment authority or fiduciary status to apply, Defendants claim their "real argument" is that "*Plaintiffs* prevented" the custodial trustees of the Severstal Plans from accepting Defendants' investment directions. Def. Resp. at 2-3 (emphasis added). This argument does not prevent summary judgment as to whether they were fiduciaries of the Severstal Plans

#### 1. Defendants' "Real Argument" Is Based on a Factual & Legal Fallacy

There is no evidence that Plaintiffs – the *current fiduciaries* of the Plan (who were not fiduciaries of the Plan until May 2009) – prevented Defendants from doing anything. Not only do Defendants not cite any law supporting their assertion that actions of prior fiduciaries can be imputed to the current fiduciaries, but the opposite is true. *See Landwehr v. DuPree,* 72 F.3d 726, 732 (9th Cir. 1995) (finding the knowledge and actions of one plan fiduciary or other agent of the Plan cannot be imputed to another fiduciary); *Bona v. Barasch,* 01 CIV. 2289 (MBM), 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003) (finding current trustee is not imputed with knowledge or acts of prior fiduciaries). As subsequent fiduciaries have a duty to remedy prior breaches, to the extent practicable, the actions of the prior fiduciaries cannot be imputed. *Stephens v. US Airways Grp.,* 555 F. Supp. 2d 112, 119 (D.D.C. 2008) aff'd in part., 644 F.3d 437 (D.C. Cir. 2011); *see CB Richard Ellis Investors, L.L.C. v. Sonnenblick,* 45 F. Appx. 680, 682 (9th Cir. 2002) (finding prior fiduciaries actions cannot be imputed to current fiduciaries in their attempt to correct violations by third party); *see infra* I.B.3. Thus, Defendants' argument is factually unsupported and legally erroneous.

        2.       <u>Defendants' "Real Argument" Conflates Fiduciary Status With Breach</u>

Defendants argue that they were prevented from diversifying the assets of the Severstal Trust. Def. Resp. at 3-6. Not only does this argument fail to create a genuine issue of fact that they *had* authority to manage the Plans' assets, but arguing that they were unable to fulfill their responsibilities implicitly concedes such responsibility existed. *See id.* Defendants attempt to distinguish the authorities cited in Plaintiffs' Objections by claiming that they "never had any administrative or investment authority over the Severstal Trust." Def. Resp. at 8. But Defendants do not dispute that the Third Amendment, which was in effect as of November 1, 2008, gave them "complete, unlimited, and unrestricted" authority over the Plans' assets and met the requirements of ERISA § 3(38). Def. R. 56.1 (ECF No. 197) ¶¶ 20, 22, 26. Agreements providing such authority over plan assets alone suffice to make Defendants fiduciaries, even if they were subsequently "deprive[d]of discretionary authority in many or all transactions." *Lowen*, 829 F.2d at 1218-19; *Silverman v. Mut. Ben. Life. Ins. Co.*, 941 F. Supp. 1327, 1334 (E.D.N.Y. 1996) (holding defendant was a fiduciary because its "contracts . . . specifically appointed [defendant] as an investment manager and acknowledged that it was a fiduciary," even if defendant could not control the relevant assets); *see Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 64 (2d Cir. 2006) (holding defendant who contractually possesses authority is an ERISA fiduciary "regardless of whether [defendant] ever exercised any discretionary authority").

As illustrated by their attempt to distinguish these cases and the evidence on which they rely, Defendants' "real argument" is about *why* they did not *exercise* discretionary authority, not that such authority was lacking. *See* Def. Resp. at 2-6 & 8. As Plaintiffs' explained in their objections, which Defendants do not address, this conflates fiduciary status with fiduciary breach. *See* Pl. Obj. at 8-9. As this Court recognized in denying Defendants' motion for

summary judgment, the latter is an issue on which there is a factual dispute *even if* Plaintiffs failed to notify the trust custodians. *See* SJ Order (ECF No. 161) at 10 ("[E]ven if Defendants established that Plaintiffs failed to fulfill their notification commitment, a reasonable jury could still find that Defendants violated their fiduciary duty by failing to be sufficiently proactive in protecting their authority to manage the undiversified Plan assets."). Plaintiffs do not dispute that whether Defendants breached their fiduciaries duties and whether those breaches caused losses should proceed to trial, but these arguments do not create a dispute as to whether Defendants were *fiduciaries*. *See Silverman* 941 F. Supp. at 1334 (distinguishing fiduciary status from causation).

Even though not relevant to this motion, Defendant selectively quote testimony to suggest that absent Labow's name on a certificate of signatures, he had no authority. Def. Resp. at 5. The "certificate" is a red herring. For example, Jacqueline Thomas clarified that the Third Amendment designation of Defendants as investment manager was sufficient for PNC/Nat City to "take[] specific direction" from Defendants "in the appropriate form fashion." Deposition of Jacqueline Thomas (ECF No. 200-3) at 23:21-24:24. Ms. Thomas unequivocally *denied* that a certificate as to signatures was required for PNC/Nat City to accept Defendants' instructions:

> Q: And the appropriate form and fashion would be that . . . a certificate of signatures would be submitted for Mr. LaBow too, is that correct?
>
> A: **That's not what I was referring to.**
>
> Q: . . . What were you referring to?
>
> A: Referring to that for . . an investment manager to provide instructions, it's done through either a brokerage arrangement . . . or in an instance where there is a written authorization, fax, written copy, hard copy mail to provide instructions.
>
> **Q: Did you ever receive such written authorization . . . for Mr. LaBow to act on behalf of the Severstal Pension Trust?**

>**A: [W]ell, I would count then that [the Severstal Plans' agreement with National City] is the direction that he is authorized.**

Thomas Dep. at 25:9-26:6 (emphasis added).  Even when Defense counsel attempted to suggest that a certificate as to signatures was required, and Ms. Thomas *again* rebuffed that suggestion:

> Q: [T]he second possibility you talked about was where . . . there's an authorization form, correct?
>
> A: I'm not—no, I'm not—**there's no specific form. There's an Investment Management Agreement that authorizes that individual for the Trust.**

Thomas Dep. at 27:7-15 (emphasis added).  And she testified that PNC recognized that LaBow was responsible for making investment decisions as the investment manager for the Plans:

> Q: Would it be correct to say that PNC viewed Mr. LaBow as the investment manager for purposes of the implementation of this Trust Agreement [between National City and Severstal]?
>
> A: Yes.
>
> * * * *
>
> Q: And is [the Third Amendment] the document that PNC recognized as making LaBow the investment manager?
>
> A: Yes.
>
> Q: . . . .Was it PNC's understanding that as investment manager, Mr. LaBow was responsible for making the investment decisions pertaining to the Severstal Pension Trust?
>
> A: Yes.

Thomas Dep. at 14:24-15:7, 15:15-16:2.[1]  Amanda Pierce, the *only other* witness from PNC, *also* testified that PNC/Nat City recognized LaBow's authority to direct trades. *See* Deposition of Amanda Pierce (ECF No. 191 Ex. I) at 25:6-19 (testifying the Third Amendment signified "[t]hat Ronald LaBow would be the investment manager to the Severstal Wheeling trust") & 104:16-22

---

[1]  Defendants also quote testimony about whether *Citibank* – the custodian prior to Dec. 31, 2008, would have acted on their authority as investment managers. *See* Def. Resp. at 3-4.  This too only addresses whether Defendants' breached, not whether they were fiduciaries.

- 5 -

(Severstal "had hired Ron LaBow as investment manager. . . . They would have called and talked to their investment manager about executing the trade . . . He would have placed the trade."). Defendants do not dispute that PNC had received a copy of the Third Amendment by December 16, 2008. Def. R. 56.1 ¶ 39.  As PNC was the custodian as of January 1, 2009, there is no dispute that he had authority by that date.

Defendants' remaining evidence does not create a disputed issue about PNC recognizing LaBow's authority over the Severstal Trust.  Def. Resp. at 4-6. Michael DiClemente simply "[did not] recall what steps were taken" to tell Neuberger Berman, that Defendants had authority to sign documents on behalf of the Severstal Trust. *Id.*  Dennis Halpin testified that he "probably" sent an instruction to Neuberger Berman that Defendants had authority to direct trades "sometime around [March] 20th" of 2009.  Def. Resp. at 5-6. But whether and when Neuberger Berman was notified of Defendants' authority is irrelevant because it is *undisputed* that Neuberger Berman did not have custody over the Plan's assets. Def. R. 56.1 ¶ 37; LaBow Dep. at 391:19-392:7; *id.* at 45:19-20. [2]  Defendant Labow *admitted* that Neuberger Berman "was not a necessary party to . . . liquidate" the Severstal Plans' assets. LaBow Dep. at 393:19-24.  Even if any of this testimony somehow created a disputed issue of fact as to their authority before March 20, 2009, Plaintiffs *still* would be entitled to summary judgment on their Motion that they were fiduciaries from March 20, 2009 until May 19, 2009. *See* Pl. Mem. at 22.

Even Defendants' inapt chauffeur analogy illustrates that Defendants do not dispute whether they had agreed and were given the authority to drive the car, but only dispute why they

---

[2]  Defendants cite no evidence that Neuberger Berman had "custody of the securities which were transferred to the Severstal Trust" after those assets were transferred to the Severstal Trust on November 3, 2008. Def. Resp. at 5. Defendants previously admitted that National City was the custodial Trustee of these assets as of January 1, 2009, and that Neuberger Berman did not have custody. *See* Def. R. 56.1 ¶ 37; LaBow Dep. at 391:19-392:7; *id.* at 45:19-20.

did not drive the car and who is responsible for crashing the car. *See* Def. Resp. at 8. As these Defendants were the chauffer (i.e. the fiduciary) and had authority to drive the car (i.e. the plans), the issue of their status and authority is not in dispute and should be decided on summary judgment. The issues of whether they breached and caused harm are issues for trial.[3]

### 3. Defendant's Newly Minted "Real Argument" Based on State Contract Law Is Not a Defense to an ERISA Breach of Fiduciary Duty Claim

For the first time on the briefing of this motion, Defendants articulate a "legal principle that a party who prevents another party from performing its contractual obligations cannot enforce those contractual obligations." Def. Resp. at 7-8. But, this argument ignores that their fiduciary status and obligations are governed by ERISA, not contract law. *Dardaganis v. Grace Capital, Inc.*, 889 F.2d 1237, 1241 (2d Cir. 1989) ("[S]tate law defenses are invalid when they would frustrate important policies underlying [ERISA].").[4] As the *current fiduciaries*, Plaintiffs bring claims under ERISA § 502(a)(2) on behalf of the Severstal Plans, so any failure by *the prior fiduciaries* to enable Defendants to exercise their investment management authority *does not* defeat Defendants' fiduciary status and potential liability to the Plans. *Id.* ("To the extent that plan trustees are negligent in enforcing the rights of beneficiaries . . . potential actions against trustees . . . do not prevent them from recovering, on behalf of the plan, losses caused by the actions of other fiduciaries."); *In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 772 F. Supp. 2d 519, 539-40 (S.D.N.Y. 2011) ("[I]t would defeat the purposes of ERISA to allow [the defendant] to use another fiduciary's actions as a shield against awarding damages

---

[3]  At trial, the evidence will show not only that Defendants had the authority, but in fact exercised that authority initially, failed to properly fulfill their duties and did nothing to rectify their original breach and those breaches caused losses.

[4]  Even if Defendants' contract-law defense were valid under ERISA, that defense does not disprove the *existence* of the contract. *See* 13 Williston on Contracts § 39.3 (4th ed. 2013) (prevention of performance does not terminate contract).

to the Plans"); *Openshaw v. Cohen, Klingenstein & Marks, Inc.*, 320 F. Supp. 2d 357, 364-65 (D. Md. 2004) ("[A]llowing a fiduciary to immunize itself by asserting the breach of another fiduciary is impermissible under [ERISA]").  Not only is this argument irrelevant to the current motion, but it is inapplicable to a claim for fiduciary breach.

## II.    DEFENDANTS WERE FIDUCIARIES UNDER ERISA § 3(21)(A)(ii)

Defendants assert that the Report concluded that the Complaint failed to allege fiduciary status under ERISA § 3(21)(A)(ii).  Def. Resp. at 9-10.  But the Magistrate Judge did not conclude that the Complaint failed to adequately allege that Defendants were fiduciaries rendering advice for the Severstal Plans; instead, the Report merely concluded that Plaintiffs "have not explained the particular advice that forms the basis of their claims for *breach of fiduciary duty*."  Report & Recommendation ("R&R") (ECF No. 207) at 26 (emphasis added).  As explained in Plaintiffs' objections, the problem with the Report's analysis is that Plaintiffs' motion was limited to establishing that Defendants were fiduciaries; Plaintiffs did not seek summary judgment on whether Defendants *breached their fiduciary duties*.  Pl. Obj. at 8-12.

On the limited question of whether Defendants were fiduciaries pursuant to ERISA § 3(21)(A)(ii), there is no disputed issue.  In their pre-motion letter, Defendants *conceded* that they were fiduciaries under ERISA 3(21)(A)(ii) from January 1, 2009 through May 19, 2009.  *See* Bunch Decl. Ex. K ("SJ Letter") (ECF No. 191-13) at 1.  As explained in Plaintiffs' Reply, the evidence, which Defendants did not dispute, establishes that all of the elements were met before January 1, 2009: Defendants both rendered investment advice for a fee or other compensation, direct or indirect to the Severstal Plans, or had authority or responsibility to do so with respect to the November 3 transfer, and, at the least, had authority to give advice until May 19, 2009 about the diversification of the Severstal Plans' assets. *See* Pl. Mem at 9-10, 16-17; Pl. Reply 7-9; Pl. Obj. at 10-20.

Defendants attempt to justify the Report's conclusion by claiming that the Complaint does not allege that Defendants gave any bad investment advice. Def. Resp. at 10. Plaintiffs entire Complaint alleges breaches based on Defendants' – who were the *paid investment manager* for the Plans – failure concerning the management and diversification of the Plans' assets both as part of the November 3, 2008 transfer and thereafter. Compl. (ECF No. 184) ¶¶ 47-73.[5] In a misguided attempt to extricate themselves from these breaches, Defendants claimed in their pre-motion letter and in depositions that they merely "recommended" the transfer and "simply advised" as to what assets should be transferred. Pl. Obj. at 10-11 (citing evidence in Pl. Mem. at 16 & SJ Letter at 2). If nothing else, the Complaint alleges that Defendants' actions regarding the November 3, 2008 transfer, whether Defendants made the decision or *merely recommended* the transfer, constitute the actions of a fiduciary of the Plan by virtue of their position as investment advisor. *See id.* As such, Plaintiffs' motion, reply and objections all explain that *even if Defendant's position is correct and they were mere recommenders rather than decision-makers,* Defendants still had fiduciary obligations with respect to those "recommendations."

At bottom, because the issue of whether they were fiduciaries is based on undisputed facts, Defendants arguments mistakenly confuse, as the Report ultimately does, the question of duties with breach and causation. *See* Pl. Obj. at 8-10. As Plaintiffs' Motion concerns *only* that

---

[5] The Complaint is replete with allegations about the actions and directions that Labow took with respect to the transfer of assets and his failure to ensure – whether by actual exercise of authority or mere recommendation – of a diversified portfolio both at the time of the transfer and after. Compl. ¶¶ 47-73. Among other things, the Complaint alleges that Defendants directed the transfer of the assets. *Id.* ¶ 39. The Complaint also alleges that Defendants "fail[ed] to inform Plaintiffs that the assets in the Severstal Trust were allocated solely in the Neuberger Berman Account" and "that the Neuberger Berman Account itself was an undiversified account comprised almost entirely of energy stocks," *Id.* ¶ 110. After November, 3rd, Defendants gave inconsistent advice that "compounded the damages to the Severstal Trust." *Id.* ¶69

- 9 -

Defendants were fiduciaries, and there is no disputed issue on that question, Plaintiffs' motion should be granted.

### III. THE COURT SHOULD MODIFY THE REPORT WITH RESPECT TO PLAINTIFFS' BREACH OF CONTRACT CLAIM

In dicta, the Report asserts that damages is the only remedy available to Plaintiffs for Defendants now-*admitted* failure to purchase fiduciary liability insurance as required by the Third Amendment.  R&R at 28-29.  As explained in Plaintiffs' objections, this contradicts the prior conclusion of this Court.  Pl. Obj. at 20-21.  Defendants make no substantive argument to support the Report's conclusion that Plaintiffs' remedy is limited to damages, but instead assert that "Defendants did not move for summary judgment on damages for this breach."  Def. Resp. at 12.  It is not only precisely, but the *only* ground on which Defendants previously moved on this claim.  Def. S. J. Mot. (ECF No. 83) at 18-19 (arguing the claim must be dismissed because plaintiffs "suffered no damages").  As the Court previously and correctly rejected this argument the Report's dicta should be rejected now.  SJ Order at 12-14; Pl. Reply at 10.

In response to Plaintiffs' objection that the Report fails to address Plaintiffs' motion for summary judgment on Defendant's affirmative defense of "impossibility," Defendant asserts that no such defense was pled.  Def. Resp. at 12-13.  It is Defendants' Tenth Affirmative Defense. Defs.' Answ. (ECF No. 185) at 15.  As Defendant WPN has failed to present any argument or evidence in support the defense, but also has not withdrawn the defense, summary judgment should be granted against Defendant on this defense.  *See* Pl. Obj. at 21.

### CONCLUSION

For the foregoing reasons, the Magistrate Judge's Report should not be adopted on these issues and Plaintiffs' Motion for Partial Summary Judgment should be granted on these issues.

Dated:  January 16, 2014                    Respectfully submitted,

/s/ Matthew A. Smith
Matthew A. Smith (admitted *pro hac vice)*
R. Joseph Barton (admitted *pro hac vice*)
Monya Bunch (#660473)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone:  (202) 408-4600
jbarton@cohenmilstein.com
mbunch@cohenmilstein.com
msmith@cohenmilstein.com

Michael Eisenkraft (#6974)
Cohen Milstein Sellers & Toll PLLC
88 Pine Street
14th Floor
New York, NY 10005
Telephone: (212) 838-7797
meisenkraft@cohenmilstein.com

*Attorneys for Plaintiffs the Severstal Wheeling Retirement Committee, Richard Caruso, William Drew Landon & Timothy Rogers and the Severstal Plans*