UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SEVERSTAL WHEELING, INC.
et al.

       Plaintiffs,

  -v-                                                    No. 10 Civ. 954 (LTS)(GWG)

WPN CORPORATION et al..

       Defendants

-------------------------------------------------------x

## MEMORANDUM ORDER

       Plaintiffs Severstal Wheeling, Inc. Retirement Committee ("SRC"), Timothy S. Rogers, Richard Caruso and William Drew Landon, the Wheeling Corrugating Company Retirement Security Plan of Severstal Wheeling, Inc. and the Salaried Employees' Pension Plan of Severstal Wheeling, Inc. (the "Severstal Plans" and, with the SRC and individual Plaintiffs, "Plaintiffs") bring this action against Defendants WPN Corporation ("WPN") and WPN's principal and sole executive officer Ronald LaBow ("LaBow")[1] (collectively, "Defendants"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., for breach of fiduciary duty, including the duty to diversify the assets of the Severstal Plans, and under state law for breach of contract for failure to obtain fiduciary liability insurance. Plaintiffs moved for partial summary judgment requesting determinations that: (1) LaBow and WPN were fiduciaries of the Severstal Plans; (2) Labow and WPN's fiduciary status was co-

---

[1] LaBow has been sued both in his individual capacity and as a named fiduciary of the "Severstal Plans." Plaintiffs also asserted claims against the WHX Corporation ("WHX") in their Third Amended Complaint (the "TAC") but, as those claims are not the subject of the instant motion, they are not discussed in this Memorandum Order.

extensive; and (3) WPN breached its contractual obligation to acquire fiduciary liability insurance for the Severstal Plans.

Plaintiffs' motion for partial summary judgment was referred to Magistrate Judge Gabriel W. Gorenstein for a Report and Recommendation (the "Report"). In the resulting Report, filed on December 12, 2013, Judge Gorenstein recommended that Plaintiffs' motion for summary judgment be granted in part and denied in part. (See docket entry no. 207.) Plaintiffs filed timely objections to the Report on December 26, 2013, to which Defendants filed an opposition and Plaintiffs filed a reply. The Court has jurisdiction of this action pursuant to 29 U.S.C. § 1132(a)(2) and 28 U.S.C. §§ 1331 and 1367. The Court has carefully considered the parties' submissions and arguments. For the following reasons, Plaintiffs' motion is granted in part and denied in part, and the Report is adopted in part.

## BACKGROUND[2]

Until late 2008, the Severstal Plans were funded and maintained through a trust sponsored by WHX. (Report at 3.) WPN and LaBow performed investment management services with respect to the WHX Trust pursuant to an Investment Agreement with WHX. (Id. at 3-4.) In September 2008, a decision was made to transfer the Severstal Plans' assets to a new and separate Severstal Wheeling, Inc. Pension Plan trust (the "Severstal Trust"). (Id. at 5.)

---

[2] The facts summarized in this section of this Memorandum Order are undisputed. The undisputed relevant facts, and the parties' further contentions in connection with this motion practice, are laid out in detail in Judge Gorenstein's December 12, 2013, Report, see Severstal Wheeling, Inc. v. WPN Corp., No. 10 Civ. 954(LTS)(GWG), 2013 WL 6502820 (S.D.N.Y. Dec. 12, 2013). See also the Court's August 17, 2012, Memorandum Order denying LaBow and WPN's motion for summary judgment. Severstal Wheeling, Inc. v. WPN Corp., No. 10 Civ. 954(LTS)(GWG), 2012 WL 3561243 (S.D.N.Y. Aug. 17, 2012). Only the facts most relevant to the instant motion are discussed here.

Before the transfer occurred, LaBow discussed it with the SRC and recommended the transfer of a specific portion of the trust of the WHX Corporation ("WHX") – the so-called "Neuberger Berman account" – which was invested heavily in large-cap energy stocks. (Def. Local Civil Rule 56.1 St. ¶ 1.) On November 3, 2008, those Neuberger Berman account assets were transferred pursuant to the direction of the WHX employee to whom LaBow had made his recommendation. (Report at 5.) Defendants contend that WPN and LaBow had no authority themselves to transfer the Severstal Plans' assets to the Severstal Trust and that Plaintiffs and WHX were the parties who directed the transfer. (Id. at 5-6.)

On December 5, 2008, LaBow and SRC member Michael DiClemente ("DiClemente") signed a Third Amendment to the original WHX Investment Agreement, providing that "Ron LaBow has the primary responsibility for performing the services of [WPN] with respect to the Investment Fund," and incorporating paragraph 7 of the original WHX Investment Agreement, granting WPN "complete, unlimited, and unrestricted management authority with respect to the investment of the [Severstal] Investment Fund." (Report at 6 (quoting WHX Investment Consulting Agreement, § 7; Third Amendment, § 2(l)).) Defendants contend that, prior to the Third Amendment, there was no agreement as to whether Defendants would have any responsibility to manage the Severstal Trust or whether Plaintiffs would be required to pay Defendants for doing so. (Report at 6.) The Third Amendment recites that it is effective as of "November 1, 2008," and that LaBow is to be paid a fee for his services. (Id. at 6.) Under the Third Amendment, WPN acknowledges that it is a fiduciary of the Severstal Plans, and is required to "obtain and maintain in effect a fiduciary liability insurance policy or policies for the benefit of" the Plans. (Id. at 7.) Plaintiffs contend that, after the November 3, 2008, transfer, Defendants continued to advise the SRC about investment options, including

diversifying the Severstal Trust.  DiClemente instructed LaBow to prepare a written plan on how to reallocate the Severstal Plans' assets and, on March 23, 2009, LaBow left a voicemail message for SRC member Denis Halpin, in which LaBow accepted responsibility for not previously diversifying the Severstal Plans' assets and expressed his desire to do so; LaBow also left a voicemail message for Sally King, an attorney for the SRC, telling her that he planned to diversify the assets.  (Report at 7.)  The Severstal Plans' assets were liquidated on March 24, 2009, and Labow continued to discuss the investment of the Severstal Trust with the SRC until May 19, 2009, when the SRC terminated WPN and LaBow's position as investment manager for the Severstal Plans.  (Id.)

On May 10, 2013, Plaintiffs filed a Third Amended Complaint (the "TAC") in this action, alleging that Defendants WPN, LaBow and WHX are liable under section 502(a)(2) of ERISA for breaching their fiduciary duty by failing to loyally manage plan assets in violation of ERISA sections 404(a)(1)(A) and 406(b); that they are liable under section 502(a)(2) of ERISA for breaching their fiduciary duty by failing to adequately diversify plan assets in violation of ERISA section 404(a)(1)(C); that Defendant WHX knowingly participated in a fiduciary breach by a non-fiduciary and is thus liable under Section 502(a)(3) of ERISA; and that Defendant WPN breached its contract with Plaintiffs by failing to obtain and maintain a fiduciary liability insurance policy.

## DISCUSSION

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," with respect to dispositive motions.  28 U.S.C.S. § 636(b)(1)(C)(LexisNexis Supp. 2013).  Those portions of the magistrate judge's

recommendations to which neither party files a timely objection may be accepted unless they are clearly erroneous.  See Tarafa v. Artus, No. 10 Civ. 3870(AJN)(HBP), 2013 WL 3789089, at *2 (S.D.N.Y. July 18, 2013).  To the extent that a party makes specific objections to a magistrate judge's findings, the court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C.S. § 636(b)(1)(C)(LexisNexis Supp. 2013).  Plaintiff here has made three specific objections to the Report, and, therefore, the Court reviews those portions of the Report de novo.  Id.

"Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party.  Id. at 255.  Rule 56(a) of the Federal Rules of Civil Procedure permits a party to "move . . . for partial summary judgment on a claim or defense, or on part of each claim or defense."  Martinez v. Hilton Hotels Corp., 930 F. Supp. 2d 508, 518 (S.D.N.Y. 2013) (internal quotation marks and citations omitted).

Plaintiffs moved for partial summary judgment on elements of their fiduciary duty claims, asking that the Court find that LaBow and WPN were fiduciaries of the Severstal Plans under ERISA § 3(21)(A)(i); that Defendants were investment managers pursuant to the Third Amendment and so were ERISA fiduciaries under ERISA § 3(38); that Defendants were fiduciaries with respect to the investment of the Severstal Plans from November 1, 2008, through May 19, 2009 under ERISA § 3(21)(A)(ii); that Defendants' fiduciary status was co-extensive;

and that WPN breached its contractual obligation to acquire fiduciary liability insurance for the Severstal Plans.

Judge Goreinstein's Report recommends denying summary judgment as to whether Defendants were fiduciaries of the Severstal Plans under ERISA §§ 3(21)(A)(i) or (ii), or as investment manager fiduciaries under § 3(38), and as to whether WPN and LaBow's fiduciary status was co-extensive. The Report recommends, however, that the Court hold that WPN had breached its contractual obligation to secure insurance. Plaintiffs object to the Report's recommendation that summary judgment be denied on the issues of fiduciary status under ERISA sections 3(21)(A)(ii) and 3(38), and request modification of the recommended ruling regarding breach of contract.[3]

Fiduciary Status Under ERISA § 3(38)

The Report recommends denial of Plaintiffs' motion insofar as it seeks a determination of fiduciary status under ERISA section 3(38) because, notwithstanding the Third Agreement's incorporation by reference of the WHX Investment Consulting Agreement's provision "authoriz[ing] and direct[ing] [WPN] to exercise complete, unlimited and unrestricted management authority with respect to the investment of the Investment Fund"[4] and WPN's

---

[3] Plaintiffs do not object to the Report's recommendation that the Court deny Plaintiffs' motion insofar as it seeks a determination that Defendants were fiduciaries under ERISA section 3(21)(A)(i). In light of the disputed factual contentions identified at pages 16 to 18 and 21 to 25 of the Report, the Court finds no error in the Report's conclusion that material issues of disputed fact regarding Defendants' ability to exercise power over Severstal Plan assets at the relevant time precludes granting Plaintiff's motion insofar as it addresses fiduciary status under section 3(21)(A)(i) of ERISA.

[4] LaBow Dep., Ex 2, WHX Investment Consulting Agreement, §7; LaBow Dep., Ex 6, Third Amendment, §5.

express "acknowledge[ment] that it is a fiduciary within the scope of Section 3(38) of ERISA,"[5] genuine issues of fact as to whether LaBow and WPN were actually given authority to effectuate investments preclude summary judgment in Plaintiffs' favor. In their Objection, Plaintiffs contend that an investment manager appointed pursuant to ERISA § 3(38) is necessarily a fiduciary and, as there was no condition precedent that had to be fulfilled for the investment management agreement to take effect, the Court should grant Plaintiffs' motion for summary judgment and find that Defendants were fiduciaries of the Severstal Plans under ERISA § 3(38).

ERISA provides that a named fiduciary[6] may delegate responsibility for making investment decisions to an investment manager. See ERISA § 3(38), 29 U.S.C. § 1002(38), see also 29 U.S.C. § 1102(c)(3). An investment manager is defined by ERISA § 3(38) as "any fiduciary . . . (A) who has the power to manage, acquire, or dispose of any asset of a plan; (B) who is . . . registered as an investment advisor under the Investment Advisers Act of 1940 [or is a bank or insurance company]; and (C) has acknowledged in writing that he is a fiduciary with respect to the plans." 29 U.S.C.S. § 1002(38) (LexisNexis 2011); see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Inv. Management Inc., 712 F.3d 705, 710, n. 4 (2d Cir. 2013) (explaining that ERISA "permit[s] named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities, . . . [that] a person who is a named fiduciary with respect to control or

---

[5] LaBow Dep., Ex 6, Third Amendment, §2(n).

[6] A "named fiduciary" is a person or entity named in an ERISA plan document who alone, or jointly or severally, has "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C.S. § 1102(a)(1)(LexisNexis 2011). ERISA's basic functional definition of fiduciary provides, inter alia, that a person is a fiduciary to the extent "he exercises any discretionary authority or discretionary control respecting management of such plan." ERISA § 3(21)(A)(i), 29 U.S.C.S. §1002(21)(A)(i)(LexisNexis 2011).

management of the assets of the plan may appoint an investment manager or managers to manage (including the power to acquire and dispose of) any assets of a plan" and that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan") (quoting 29 U.S.C. § 1002(21)(A)).

Section 3(38) of ERISA does not, by its terms, create a path to fiduciary status independent of the functional definitions set forth in section 3(21)(A). Rather, to come within section 3(38)'s definition of investment manager, one must be a fiduciary _and_ meet the criteria of that provision. Thus, notwithstanding Defendants' acceptance of the title of investment manager and acknowledgment of fiduciary status, their fiduciary status by virtue of WPN's appointment as investment manager turns on whether they exercised "any authority or control respecting management or disposition of [plan] assets." ERISA §3(21)(A)(i); 29 U.S.C.S. § 1002(21)(A)(LexisNexis 2011). As demonstrated at pages 16 to 18 and 21 to 25 of the Report, material issues of fact preclude a determination on this motion practice as to whether Defendants had the power to exercise any such authority or control. Thus, the Report correctly concludes that Plaintiffs' partial summary judgment motion must be denied to the extent it relies on ERISA section 3(38) for fiduciary status.

Fiduciary Status Under ERISA § 3(21)(A)(ii)

Plaintiffs also object to the Report's recommended conclusion that there is a genuine issue of material fact as to whether LaBow and WPN were fiduciaries under ERISA § 3(21)(A)(ii), because Plaintiffs failed to identify "the particular context" in which they sought to hold Defendants liable for rendering investment advice.  (See Report at 25.)  The Report recommends that, because Plaintiffs did not specify the particular advice forming the basis of their fiduciary breach claims, the record provided an insufficient basis for a determination of the fiduciary status element of their claim.  The Court respectfully disagrees and, for the following reasons, finds that Plaintiffs are entitled to partial summary judgment as a matter of law on the fiduciary status element of their breach claim relating to the rendering of investment advice for a fee.

ERISA § 3(21)(A)(ii) provides that "a person is a fiduciary with respect to a plan to the extent that . . . he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of [an ERISA plan], or has any authority or responsibility to do so."  29 U.S.C.S. §1002(21)(A)(ii) (LexisNexis 2011) (emphasis supplied).  Department of Labor Regulation 29 C.F.R. § 2510.3-21(c)(1)(i)-(ii)(A)-(B) explains further that a person is a fiduciary rendering investment advice under 29 § U.S.C. 1002(21)(A)(ii) if he or she "makes recommendations as to the advisability of investing in, purchasing, or selling securities or other property" to an ERISA plan and either "[h]as discretionary authority or control . . . , with respect to purchasing or selling securities or other property for the plan," or "[r]enders any advice . . .  on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, . . . that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such

person will render individualized investment advice to the plan based on the particular needs of the plan."

To demonstrate that Defendants were fiduciaries under § 3(21)(A)(ii), Plaintiffs must establish that Defendants made recommendations to the Severstal Plans about the advisability of investing in, purchasing or selling securities or other property, and rendered advice on a regular basis under a mutual agreement that such advice would serve as a primary basis for investment decisions regarding the Plans' assets. Plaintiffs must also show that Defendants' advice was structured to the particular needs of the Severstal Plans. See also In re Beacon Ass'n Litig., 282 F.R.D. 315, 335 (S.D.N.Y. 2012) ("investment advisors who do not possess discretionary authority over the assets of ERISA-covered plans qualify as fiduciaries only when they (1) provide advice to the plan on a regular basis, pursuant to an agreement with the plan or with a fiduciary to the plan that such advice will be (2) a primary basis for the investment of plan assets and (3) individualized to the particular needs of the plan"). The statute itself provides that authority or responsibility for the provision of such advice for a fee is also sufficient to confer fiduciary status. 29 § U.S.C. 1002(21)(A)(ii). "In determining whether [the requisite] agreement existed, . . . the court must look to the nature and duration of the relationship and weigh various factors." Ellzey v. Carter, 920 F. Supp. 26, 29 (D. Conn. 1995).

Here, the undisputed record establishes that Defendants had a relationship with WHX and its consolidated trust under an "Investment Consulting Agreement" dating back to 2004. The agreement provided for placement of assets of the WHX Pension Plan trust "under the management of" WPN, with LaBow, as WPN's principal officer, "actively involved in the performance of [WPN's] duties under th[e] Agreement." (LaBow Dep., Ex 2, WHX Investment Consulting Agreement, at 1.) The arrangement was continued under a Second Amendment to

the Agreement, and the Agreement was adapted and continued by the Third Amendment with respect to responsibility for the separate Severstal Plan trust investments. The Third Amendment specifically provides that LaBow "has primary responsibility for performing the services of [WPN] with respect to the [Severstal] Investment Fund." (LaBow Dep., Ex 6, Third Amendment, § 2 (adding new section 3(l))). These agreements and amendments confer responsibility on WPN for selecting investments and investment vehicles, duties that necessarily subsume the formulation and communication of strategic investment advice individualized to plan needs. The agreements also provide for fees to be paid to WPN for Defendants' services. Thus, on the face of the Third Amendment and its predecessor agreements covering the consolidated trust, Defendants had authority and responsibility for rendering investment advice for a fee.

Moreover, the undisputed facts demonstrate that Defendants recognized and exercised this responsibility at relevant times. Plaintiffs have proffered evidence that LaBow admitted that he recommended the November 3, 2008, transfer of assets and that, after the transfer, he communicated with various SRC members regarding aspects of the investments. (See e.g., LaBow Decl.¶ 35 (LaBow "had numerous conversations" with Plaintiff and WHX before the November 3 transfer "about what the options were"); LaBow Decl.¶ 40 ("the direction to transfer the [Neuberger Berman] Securities was discussed on numerous occasions with Plaintiffs, and they agreed it should be given"); Bunch Decl., Ex. E "LaBow Dep." at 209:1-209:8; Id., Ex. G "Haplin Dep. Ex. 15" (LaBow writing to SRC member Dennis Halpin that the Severstal Plans' assets "resulted in a 10% gain")).) On February 4, 2009, LaBow presented four investment options to the SRC, albeit stating that "none of this will be done without your approval." (LaBow Decl., ¶ 74.) According to LaBow, he "repeatedly advised Plaintiffs to sell

off the [Neuberger Berman] Securities" and his declaration refers to a particular email that he wrote in February 2009, urging Plaintiffs to sell the securities.  (See e.g., LaBow Decl.¶¶ 76, 78.)  On March 23, 2009, LaBow informed SRC member Dennis Halpin and SRC attorney Sally King that the Severstal Trust was not diversified and that he thought that the Trust's holdings should be diversified.  (Def. 56.1 Stmt. ¶¶ 54-55.)  LaBow further contends that, after the sale of the securities, he continued to recommend investment options.  (LaBow Decl.¶ 88).

Accordingly, Plaintiffs have established that Defendants made recommendations to the Severstal Plans under the Third Amendment about the advisability of investing in, purchasing or selling securities or other property for these particular plans, activity that clearly constitutes the rendering of investment advice for a fee.  Plaintiffs are thus entitled to partial summary judgment holding that, as a matter of law, the fiduciary status element of their fiduciary breach claim is established insofar as Defendants were at relevant times investment advisory fiduciaries within the meaning of ERISA section 3(21)(A)(ii).  Plaintiffs still bear the burden of proving that WPN breached its ERISA duties in its capacity of investment adviser, and that the Severstal Plans are entitled to relief as a result.  The Court expresses no opinion at this stage as to whether Plaintiffs will be able to do so.[7]

---

[7]   Because Plaintiffs do not object to the Report's recommendation that the Court find that Plaintiffs are not entitled to summary judgment on the issue of whether WPN and LaBow's fiduciary status was "co-extensive" and it is not clear whether any purported co-extensiveness is part of a claim or defense that must be adjudicated in order to resolve this case, the Court adopts the Report's recommendation on this issue and does not decide whether Defendants' fiduciary status was co-extensive.  (See Report at 27.)

Plaintiffs' Breach of Contract Claim

Plaintiffs also seek partial summary judgment on Count IV of the TAC, which alleges that WPN breached its contract with Plaintiffs by failing to maintain a fiduciary insurance policy, and ask that the Court determine that there is insufficient evidence to support the Defendants' affirmative defense of impossibility. The Report recommends granting partial summary judgment to Plaintiffs on the elements (other than damages) of their contract claim and finding that Defendants are liable for breach of their obligation under the Third Amendment to obtain and maintain fiduciary insurance. (See Report at 29-30.) As there is no objection to this aspect of the Report and the Court does not find Magistrate Judge Gorenstein's proposed finding on this issue to be clearly erroneous, the Court adopts the Report's recommendation and grants Plaintiffs' motion, finding that WPN breached the Third Amendment by failing to obtain fiduciary insurance.[8]

As for the affirmative defense of impossibility, Plaintiffs argue that, as a matter of law, Defendants cannot establish this defense – which was raised for the first time in their answer to the TAC as Defendants' Tenth Affirmative Defense. Defendants did not counter this argument in their opposition to the Plaintiffs' motion for summary judgment, and state in their opposition to Plaintiffs' Objection that they did not intend to raise such an affirmative defense. (See Def. Opp to Objection at 12-13.) Therefore, the Court grants Plaintiffs' request for summary judgment striking this defense.

---

[8] Plaintiffs object to the Report's "dicta about the available remedies." (Obj. at 20.) This dicta does not undermine the Report's recommendation to grant Plaintiffs' summary judgment on the breach of contract claim and the Court finds no reason to reject or modify the Report's proposed finding.

CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' partial summary judgment motion to the extent it seeks a determination that Defendants were Severstal Plan fiduciaries within the meaning of ERISA sections 3(21)(A)(i) and 3(38).  The Court grants Plaintiffs' motion to the extent it seeks a determination that Defendants were at relevant times fiduciaries to the Severstal Plans within the meaning of ERISA section 3(21)(A)(ii).  The Court adopts section III. B. of the Report and Recommendation (docket entry no. 207) (denying summary judgment on the question of "co-extensive" liability) and section III. C. of the Report and Recommendation (granting partial summary judgment on the issue of contract breach). Plaintiff's motion for partial summary judgment is in all other respects denied.

This Memorandum Order resolves docket entry number 188.

The parties are directed to schedule a settlement conference promptly with Judge Gorenstein.

The parties are scheduled to appear before the undersigned on **Friday, May 30, 2014, at 11:00 a.m.** for the final pretrial conference in this matter.  The parties must comply with the consultation and submission provisions of the original Pre-Trial Scheduling Order in this case (see docket entry no. 32) in advance of the final pretrial conference.

SO ORDERED.

Dated: New York, New York
April 11, 2014

　　　　　　　　　　　　　　　　　　　　　　　　/s/ Laura Taylor Swain
　　　　　　　　　　　　　　　　　　　　　　　　LAURA TAYLOR SWAIN
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge