UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SEVERSTAL WHEELING, INC.
RETIREMENT COMMITTEE et al.,

        Plaintiffs,

  -v-                                                                     No.  10 Civ. 954 (LTS)(GWG)

WPN CORPORATION et al.,

        Defendants

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Plaintiffs, who are the current members of the Severstal Wheeling, Inc. Retirement Committee, brought suit in their representative capacity, together with the Severstal Plans,[1] against Defendants WPN Corporation ("WPN") and Ronald LaBow (together, "Defendants").  After a bench trial, this Court issued an Opinion and Order on August 10, 2015, finding that the Defendants breached their fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., and entered judgment in favor of Plaintiffs for approximately $15 million.[2]  Plaintiffs have moved for an award of attorneys' fees and non-taxable costs in the amounts of $2,478,042.03, and $394,531.51, respectively, pursuant

---

[1]     The Severstal Plans consisted of two defined contribution plans sponsored by Severstal Wheeling, Inc and its predecessors, the Wheeling Corrugating Company Retirement Security Plan and the Salaried Employees Pension Plan of Severstal Wheeling.

[2]     Defendants filed a notice of appeal on August 26, 2015 (docket entry no. 262), and the appeal is currently pending before the Second Circuit.

to ERISA's fee-shifting provision, Section 502(g). Defendants have not filed any opposition to the motion.

The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

The Court has thoroughly reviewed Plaintiffs' application and accompanying papers. For the following reasons, Plaintiffs' motion is granted in part.

BACKGROUND

The Court assumes familiarity with the issues litigated in this case, which are discussed in detail in the August 10, 2015, Opinion and Order. (Docket entry no. 257). A brief overview of the litigation follows.

This litigation has been a long and contentious one, spanning over five years with multiple rounds of motion practice and culminating in an eight day bench trial. The initial complaint was filed in February 2010, followed by two amended complaints. (Docket entry nos. 1, 29, 48). Defendants moved to dismiss all three complaints, and Plaintiffs opposed all three motions to dismiss. (Docket entry nos. 24, 40, 61). After the Court denied the Defendants' motion to dismiss the Second Amended Complaint, Defendants moved for summary judgment prior to the close of fact discovery, which Plaintiffs successfully opposed. (Docket entry nos. 80, 96, 161). Fact discovery was completed by February 29, 2012, which included fourteen discovery requests and the depositions of thirteen witnesses. (See Pls. Br. 2; Decl. Mark A. Willard ¶ 17.) On August 14, 2012, due to the bankruptcy of Severstal Wheeling, Inc. a/k/a RG Steel Wheeling, LLC, the Court granted the motion of Eckert Seamans Cherin & Mellot LLC ("Eckert Seamans") to withdraw as counsel, and Plaintiffs' current counsel, Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein"), entered an appearance on December 18, 2012.

(Docket entry nos. 160, 173).  Plaintiffs, with new counsel, worked with experts to prepare expert reports, filed a Third Amended Complaint (necessitated by the bankruptcy and a change in Committee members), and filed a motion for partial summary judgment, which was granted in part.  (Docket entry no. 223).  Leading up to the trial, which began on July 8, 2014, Plaintiffs' counsel prepared to present the testimony of eleven fact witnesses, ten of whom ultimately testified live, and two additional witnesses who testified by deposition.  Plaintiffs' counsel also filed a motion in limine to exclude a witness, which resulted in the challenged witness being withdrawn.  (Docket entry nos. 213, 222).  At the trial, Plaintiffs presented the live testimony of eight fact witnesses and two experts and admitted 100 exhibits, and subsequently submitted pre-trial and post-trial briefings.

Plaintiffs are seeking attorneys' fees in the amount of $2,478,042.03, specifically $1,555,378.75 for Cohen Milstein's fees and $922,663.28 for Eckert Seamans' fees.  Plaintiffs are also seeking costs in the amount of $394,531.51, specifically $331,899.34 for Cohen Milstein's costs and $62,632.17 for Eckert Seamans' costs.

## DISCUSSION

Section 502(g) of ERISA provides that "the court in its discretion may allow a reasonable attorney's fees and costs . . . to either party."  29 U.S.C. § 1132(g)(1).  To be eligible for an award of fees, a party must have achieved "some degree of success on the merits." Donachie v. Liberty Life Assurance Co. of Boston, 745 F.3d 41, 46 (2d Cir. 2014).  A court may award attorneys' fees to a party that has achieved some degree of success on the merits "without further inquiry," but retains the discretion to consider five additional factors in deciding whether

to award attorneys' fees.  Id.  Those five factors, known in the Second Circuit as the "Chambless factors," are:

> (1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

Id.  (citations omitted).

Because Plaintiffs have clearly prevailed in the instant litigation and Defendants have been found liable for the breach of their fiduciary duties under ERISA, the Court finds that an award of attorney's fees is warranted.  Nonetheless, a brief examination of the five Chambless factors also shows that they weigh in favor of granting attorneys' fees.  First, as the Court found in the August 10, 2015, Opinion and Order, the Defendants breached their fiduciary duty under ERISA, specifically by transferring an undiversified portfolio of assets to the Severstal Plans and subsequently failing to recommend and implement a diversified portfolio.  Such conduct demonstrates substantial culpability for purposes of factor one.  See Slupinski v. First Unum Life Ins. Co., 554 F.3d 38, 48 (2d Cir. 2009) ("[C]onduct that is blameable; censurable; . . . at fault" or "involving the breach of a legal duty or the commission of a fault" is sufficient for culpability (internal quotation marks and citations omitted)).  Second, although this factor is weighed less heavily, the Court takes judicial notice of the fact that WPN, which is jointly and severally liable with individual defendant, reported more than $1 billion in assets under management and is

compensated as a percentage of those assets. (See Decl. of R. Joseph Barton, Ex. F. Item 5-F.) Third, a fee award would deter investment professionals owing fiduciary duties under ERISA from failing to prudently manage and diversify retirement plan assets. Fourth, the claim here was brought on behalf of the Severstal Plans and the relief awarded inures to the benefit of the plans as a whole. See Mass. Mut. Life. Ins. Co. v. Russell, 473 U.S. 134, 140 (1985). Finally, as there has been a determination on the merits in favor of Plaintiffs, the fifth factor also weighs in favor of awarding attorneys' fees.

Having found that an award of attorneys' fees is warranted here, the Court considers whether the specific requested amounts are reasonable. Although "[t]here is no precise rule or formula for making [attorney's fee award] determinations," Hensley v. Eckerhart, 461 U.S. 424, 436 (1983), in the Second Circuit, reasonable attorneys' fee awards are determined using the standard of the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2007); see also Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). In computing the presumptively reasonable fee, district courts should "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Simmons, 575 F.3d at 172 (internal quotation marks and citation omitted). Pursuant to the "the forum rule, courts 'should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" Id. at 174 (citation omitted). In determining what a reasonable client would be willing to pay, the Second Circuit in Arbor Hill directed district courts to consider factors including, but not limited to:

> The complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

522 F.3d at 184.

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437. Applications for award of fees must be documented by time records that are contemporaneously created and that specify, for each attorney, the date, the hours expended, and the nature of the work done. Bliven v. Hunt, 578 F.3d 204, 213 (2d Cir. 2009). The Court should exclude from the initial fee calculation hours that were not "reasonably expended," including "excessive, redundant, or otherwise unnecessary" hours and hours dedicated to severable unsuccessful claims. Mason Tenders Dist. Council v. Aurash Constr. Corp., No. 05 Civ. 1891, 2006 WL 647884, at *2 (S.D.N.Y. May 15, 2006) (quoting Hensley, 461 U.S. at 433).

Cohen Milstein, Plaintiffs' current counsel, is a plaintiff-side firm with eighty attorneys and offices in Washington D.C., New York, Philadelphia, Chicago, Denver, and Florida. The firm claims a concentration in the area of employee benefits and ERISA litigation, and has handled significant litigation in that space resulting in multi-million dollar resolutions.

Plaintiffs are claiming the following hourly rates for Cohen Milstein attorneys and staff: $665 per hour for R. Joseph Barton, a partner with 14 years of experience who concentrates in ERISA litigation and has served as trial counsel in three ERISA actions; $605 per hour for Michael Eisenkraft, a partner with 12 years of experience who concentrates in securities and commodities litigation; $550 per hour for Monya Bunch, a seventh-year associate in the firm's employee benefits group; $450 per hour for Matthew Smith, a fourth-year associate in the firm's employee benefits group; and between $240 to $260 per hour for paralegals and law clerks.

Eckert Seamans is a national law firm with 360 lawyers and 14 offices across the United States. The firm handles both plaintiff- and defense-side ERISA cases, with its plaintiff-side representation restricted to cases on behalf of clients whose vendors or fiduciaries have breached their duties to clients, their benefit plans or trusts. (Decl. Mark A. Willard ¶ 2.) The partner principally responsible for the firm's work on this litigation, Mark A. Willard, is based in Pittsburgh, Pennsylvania. Plaintiffs are claiming the following hourly rates for Eckert Seamans attorneys and staff:[3] $425 to $470 per hour for Mark Willard, a partner concentrating in complex commercial litigation and ERISA litigation; $330 to $345 per hour for Clare Gallagher, a partner in the litigation division and labor and employment practice group, who regularly advises clients on employee benefit issues and litigation; $370 to $405 for Sandra Mihok, chair of Eckert Seamans' employee benefits practice group, who has represented clients in a variety of employee benefits and related areas; $170 to $190 for Andrew Quesnelle, an associate in the

---

[3] Eckert Seamans had various hourly rate increases during the pendency of this matter. Plaintiffs have not proffered information concerning the respective years of experience of these attorneys nor could the Court readily discern such information from the firm's website. The total proposed attorneys' fees incorporate the client discounts already taken by Eckert Seamans. (Decl. Mark A. Willard ¶ 24 n.1.)

litigation division and labor and employment practice group; and between $102 to $420 for other attorneys consulted on the matter for a few hours; $105 to $165 for paralegals and librarians.

In consideration of the claims in this case, the complex financial nature of the legal and factual issues, the highly contested and protracted proceedings including a trial, and the prevailing market rates for lawyers in this district handling relatively complex commercial matters, the Court finds that the Plaintiffs' proposed rates are reasonable. Although counsel's rates are higher than those awarded in ERISA benefit claim cases litigated in this district, such cases involve a relatively simpler set of issues. See, e.g., Taaffe v. Life Ins. Co. of N. Am., 769 F. Supp. 2d 530 (S.D.N.Y. 2011) (in ERISA disability benefits claim, awarding name partner $560 per hour; associates with at least five years of experience $340 per hour; paralegals $180 hour); cf. Merino v. Beverage Plus America Corp., No. 10 Civ. 706, 2012 WL 4468182 at *3 (S.D.N.Y. Sept. 25, 2012) (in FLSA wage claim case, awarding $450 to $700 for partners, $275 to $300 for associates, $125 for law clerks, and $100 for paralegals). By contrast, although this case arises out of ERISA, the litigation involved a much more complicated set of legal and factual issues concerning investment management, investment strategy and the appropriate scope of fiduciary duties owed by investment professionals. As such, this case more suitably falls within the general category of complex commercial litigation, for which firms in this district often charge rates higher than those claimed here. See, e.g. In re AOL Time Warner Shareholder Derivative Litig., No. 02 Civ. 6302, 2010 WL 363113 (S.D.N.Y. Feb. 1, 2010) (in breach of fiduciary duty action against directors and officers, finding that hourly rates ranging from $90 to $250 for paralegals, $175 to $550 for associates, and $300 to $850 for partners fall within the range of those commanded by leading lawyers in the Southern District); Rubenstein

v. Advanced Equities, Inc., No. 13 CV 1502, 2015 WL 585561, at *7 (S.D.N.Y. Feb. 10, 2015) (in broker-dealer employment contract dispute, noting that large New York offices had the highest average partner and associate billing rates, at $882 and $502, respectively).[4]  The Court also takes note of the declaration submitted by David S. Preminger, a member at the firm of Keller Rohrback LLP and an established practitioner in employee benefit litigation in New York City, attesting to the fact that his firm charges rates comparable to the rates requested by Cohen Milstein.  (See docket entry no. 271.)  Cohen Milstein is not a premier large New York firm, but its proposed rates fall below those charged by the highest-tier firms and the Court finds them to be within the range of reasonable rates charged by firms of comparable caliber for complex commercial matters.  Given all of the above considerations, the Court finds that Plaintiffs' proposed rates are reasonable.[5]

       The Court recognizes, however, that within large-scale litigation drawn over a period of several years, there are inherent inefficiencies and redundancies that occur with respect to the time expended on a case employing numerous attorneys, which are outside the scope of compensable attorneys' fees.  See In re AOL Time Warner Shareholder Derivative Litig., 2010 WL 363113, at *20 (noting existence of built-in inefficiencies and record keeping deficiencies

---

[4] Plaintiffs suggest that, because the standard for ERISA is a national one, the Court should consider the rates charged by lawyers from around the country handling ERISA cases.  The Court rejects this suggestion in light of the forum rule articulated by the Second Circuit in Simmons, 575 F.3d at 176-77.  Moreover, the decisions Plaintiffs cite arose in the context of approving attorneys' fees as a percentage allocation of a common fund in class action settlements.

[5] Though not determinative to the Court's finding, the Court finds reassurance of the reasonableness of the requested fees in the fact that Plaintiffs' total requested attorneys' fees stand at approximately 17 percent of the judgment awarded in this case.

stemming from the nature of large cases); Mason Tenders, 2006 WL 647884 at *2.  Although there has been no opposition received raising issues with the claimed hours, the Court in its own review of the submitted records notes, inter alia, that there are time entries that are blockbilled and vague in description, for instance stating that only a meeting has occurred but not specifying the subject matter discussed.  Further, given that there was a change in counsel in the middle of the case, there is certain to have been some duplication in terms of transition and background work.  The Court will impose an across-the-board ten percent reduction of the overall claimed attorneys' fees to account for these types of billing concerns and inefficiencies.  The reduction will further ensure that the effective hourly rates will be well within the bounds of reasonable fees in this district for lawyers of comparable experience and skill dealing with cases of equal complexity.  Accordingly, the Court will award reduced attorneys' fees in the total amount of $2,230,237.83.  See, e.g., Taaffe, 769 F. Supp. 2d at 544 (making across-the-board fifteen percent cut to hours claimed, in addition to a voluntary ten percent cut, to account for excessive billing records).  The Court finds that the requested costs are reasonable, and accordingly awards costs in the amount of $394,531.51.

## CONCLUSION

Plaintiffs' motion for attorneys' fees and costs is granted in part.  The Court awards Plaintiffs attorneys' fees in the amount of $2,230,237.83 and costs in the amount of $394,531.51, for a total of $ 2,624,768.34.  The Clerk of Court is requested to enter judgment accordingly.

This Order resolves docket entry number 263.

SO ORDERED.

Dated: New York, New York
April 21, 2016

   /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge